467 A.2d 862

**COMMONWEALTH of Pennsylvania**

v.

**Robert MOORE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 2, 1983.

Filed Nov. 4, 1983.

4

Thomas L. McGill, Jr., Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant challenges the legality of his arrest, several trial court rulings, and the effectiveness of counsel. We find these contentions meritless and, accordingly, affirm the order of the lower court.

Rosenwald's Meat Market was robbed on October 25, 1976, and again on October 29, 1976, by a man wearing white painter's pants and a stocking mask and carrying a sawed-off shotgun. Police arrested appellant at his home on November 15, 1976, pursuant to a warrant, and seized several items, including a stocking mask and white painter's pants, from appellant's bedroom. While in custody, appellant made an inculpatory statement. At a suppression hearing on October 3, 1977, appellant unsuccessfully moved to suppress the confession as well as the stocking mask and painter's pants.[1] After a jury trial on October 26, 1977, appellant was convicted of the October 29 robbery and sentenced to ten-to-twenty years imprisonment. Appellant's notice of appeal was quashed as untimely. Following appellant's subsequent Post Conviction Hearing Act (PCHA) petition, he was granted the right to request an appeal to this Court *nunc pro tunc*. This Court allowed the appeal on April 22, 1981.

■■■ Appellant contends first that his arrest was illegal because the warrant was not issued upon probable cause. Appellant relies on the two-pronged standard outlined in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[2] The United States Supreme Court, however, has abandoned the *Aguilar-Spinelli* test in favor of a "totality of the circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d

1. Other physical evidence seized on November 15, *i.e.* a notebook, letters, and appellant's personal identification, was suppressed. A photographic identification was also suppressed as impermissibly suggestive because the photographs shown to witnesses were Philadelphia Police Department photographs containing identifying legends.

2. The *Aguilar-Spinelli* standard for determining the validity of a warrant requires that the affidavit set forth some of the "underlying circumstances" necessary to enable the magistrate independently to judge (1) the validity of the informant's conclusions, and (2) the credibility of the informant and the reliability of his information. *Commonwealth v. Matthews*, 446 Pa. 65, 70, 285 A.2d 510, 512 (1971), citing *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

527 (1983). Under the new standard, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at ———, 103 S.Ct. at 2332. The court is to make "a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]" *Id.* at ——— - ———, 103 S.Ct. at 2329–30. Our Court recently applied *Gates* in *Commonwealth v. Price,* 318 Pa. Superior Ct. 240, 464 A.2d 1320 (1983). In both *Gates* and *Price,* the affidavit was deemed sufficient when based on an anonymous informant's tip corroborated by independent police work. Here, the arrest warrant was issued on the basis of an anonymous informant's tip, a photographic identification, and a description of the suspect. The informant was an eyewitness to the robberies who remained anonymous out of fear of retaliation, but who was later identified and testified at trial. (N.T. October 3, 1977 at 86 and October 25, 1977 at 2.5–2.14). The photographic identification was made by the owner of the meat market who witnessed the robbery. Although the photographic identification was later suppressed on the ground that the showing was impermissibly suggestive, probable cause for arrest may be based upon illegally obtained evidence. *Commonwealth v. Turner,* 478 Pa. 613, 387 A.2d 657 (1978). Moreover, there was an independent basis for the identification because the owner knew appellant from the neighborhood and recognized him during the robbery. On these facts, there was probable cause for the arrest warrant.[3]

---

**3.** Appellant's additional contention that the painter's pants and stocking mask should have been suppressed as the fruit of an illegal arrest is clearly meritless because we have determined that the arrest was lawful and the evidence was seized in plain view pursuant to that arrest.

We recognize that *Commonwealth v. Price, supra,* is the first Pennsylvania appellate court case addressing the new standard and that our Supreme Court has not yet officially adopted *Illinois v. Gates, supra.* However, even under the *Aguilar-Spinelli* test, we believe there was probable cause for the arrest warrant in the instant case. The reliability and credibility of the informant derives from his role as an "unquestionably honest citizen" who talked to the police detective in

■ Appellant contends next that his confession should have been suppressed as an involuntarily coerced statement. He argues specifically that he was never taken to the bathroom, told of his right to make a phone call, or asked when he had last eaten, and was surrounded by several large detectives of heavy build. Appellant's contention lacks merit. Appellant was arrested at 10:30 a.m. on November 15, 1976, and he gave his inculpatory statement between 12:30 p.m. and 2:30 p.m.; therefore, there was no undue delay. He received *Miranda* warnings and waived his rights to remain silent and to have an attorney present. He was not beaten. Additionally, because we have determined the arrest was lawful, the confession cannot be suppressed as the fruit of illegality. Under these circumstances, we agree with the lower court's conclusion that appellant's confession was knowing, intelligent, and voluntary.

■ Appellant contends also that the lower court's consolidation of the two robbery charges denied him his right to a fair trial. "It is well established that the propriety of consolidating separate indictments for trial is a matter of discretion with the trial judge, and the exercise of this discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Morris*, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981) (citations omitted). The court must weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy. *Id.* Moreover, our Supreme Court has held that Pa.R.Crim.P. 219(b), which provides that two or more offenses may be charged in the same indictment if they are of similar character or arise out of the same transaction, is equally

person. The basis of his knowledge is his eyewitness observations of the robberies as they occurred and his recognition of appellant, whom he had seen many times before, as the robber.

We also recognize that both *Gates* and *Price* dealt with search warrants whereas the instant case involves an arrest warrant. As under the *Aguilar-Spinelli* test, however, the new warrant standard applies equally to arrest warrants. *See Gates, supra.*

applicable to the consolidation for trial of separate indictments or informations. *Id.*, 493 Pa. at 170, 425 A.2d at 717-18, *citing Commonwealth v. Lasch,* 464 Pa. 573, 347 A.2d 690 (1975), and *Commonwealth v. Moore,* 463 Pa. 317, 344 A.2d 850 (1975). In the instant case, both robberies were perpetrated on the same meat market and were only four days apart. Both robberies involved the same *modus operandi:* a black male wearing white painter's pants and a stocking mask and carrying a sawed-off shotgun. One witness identified appellant from both robberies. Appellant confessed to both crimes. Clearly, the considerations of judicial economy are considerable. On the other side, the possibility of prejudice is slight. The risk of prejudice by presenting the jury with cumulative evidence or having the jury improperly infer criminal disposition seems minimal, considering that the jury acquitted appellant of the first robbery. Under these circumstances, the trial judge did not abuse his discretion in consolidating the two robbery charges in one trial.

Appellant contends next that the lower court should have granted his motion for a mistrial because a statement made by a prosecution witness impermissibly referred to other criminal activity on the part of appellant. The prosecution cannot introduce evidence, either directly or by reasonable implication, of defendant's prior criminal conduct. *Commonwealth v. Irwin,* 475 Pa. 616, 381 A.2d 444 (1977); *Commonwealth v. Waters,* 273 Pa. Superior Ct. 178, 417 A.2d 226 (1979). The pertinent part of the testimony is as follows:

Q. [PROSECUTOR]: What makes you so sure that Robert Moore is the man that walked into the store October 29?

A. [MR. Rosenwald]: I had dealings with him before. That is not the first time. I am sorry I can't bring up the other stuff. He also lives around the neighborhood right there.

(N.T. October 24, 1977 at 1.86–1.87). The above testimony does not suggest prior criminality, but only prior familiarity

with appellant. The jury could have reasonably concluded that the other dealings referred to were commercial or personal. Accordingly, appellant's contention is meritless.

Finally, appellant alleges ineffectiveness of trial counsel for failing to file pre-trial motions challenging his allegedly illegal arrest and to request a pre-trial lineup. Counsel is deemed ineffective if the issue not raised is of arguable merit and counsel had no reasonable basis for failing to assert it. *Commonwealth v. Evans,* 489 Pa. 85, 91, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Hubbard,* 472 Pa. 259, 278, 372 A.2d 687, 696 (1977); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). We have already determined that there is no merit to appellant's claim of illegal arrest and therefore trial counsel had a reasonable basis for not challenging the arrest. Similarly, counsel had a reasonable basis for not requesting a pretrial lineup. First, there is no constitutional right to a lineup. *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975). More significantly, all three prosecution witnesses knew appellant from the neighborhood and had observed him during the robberies. They could have, therefore, easily identified him at any lineup, thereby strengthening the Commonwealth's case. Accordingly, counsel might have been deemed ineffective had he requested a lineup.[4]

---

**4.** Appellant also raises several additional claims in a *pro se* brief which was attached as an Appendix to counsel's brief. We will not address the *pro se* arguments. In *Commonwealth v. Kibler,* 294 Pa. Superior Ct. 30, 439 A.2d 734 (1982), we stated that "[a]s a matter of policy this Court will not consider separate briefs filed by counsel and pro se briefs filed by the appellant[,]" and remanded the case to the lower court to determine whether appellant wished in his appeal to act on his own behalf or through counsel. *Id.,* 294 Pa.Superior Ct. at 33, 439 A.2d at 736. We believe, however, that the facts of the instant case are sufficiently distinguishable from *Kibler* as to *not* warrant a remand. In *Kibler,* because the defendant and his counsel filed separate briefs alleging entirely separate issues, the court was unable to determine whether counsel considered the issues that the defendant raised in his *pro se* brief or how the defendant wanted to proceed on appeal. In the instant case, however, appellant's *pro se* brief was filed as an appendix to counsel's appellate brief and contained several of the same issues. Appellant also listed counsel's name as the "Attorney

Because all of appellant's contentions lack merit, we must affirm the order of the lower court.[5]

Affirmed.

for Defendant" on the cover of his *pro se* brief. Therefore, unlike *Kibler*, we *can* determine that appellant chooses to appeal through counsel and that counsel considered the extra issues raised in the *pro se* brief. Accordingly, a remand would result in an unnecessary duplication of effort since the same issues would be addressed.

Furthermore, our position is supported by *Commonwealth v. Almeida*, 306 Pa. Superior Ct. 197, 452 A.2d 512 (1982), (Concurring and Dissenting Opinion by SPAETH, J.), in which three out of seven members of the en banc Court joined. In *Almeida*, Judge SPAETH, unlike the majority, addressed the issue of whether the Court should consider an appellant's supplemental *pro se* arguments on appeal. He concluded that the Court should *not* because to do so would encourage the submission of *pro se* briefs and thus "creat[e] a shadow docket of hundreds of appeals," 306 Pa. Superior Ct. at 216, 452 A.2d at 521 (citation omitted), and noted that, although not considering *pro se* briefs might result in PCHA petitions alleging counsel's ineffectiveness for failing to raise the *pro se* arguments, "on balance, [refusing to consider supplemental *pro se* briefs] will result in a more orderly and therefore more efficient administration of justice[.]" *Id.*

5. The Commonwealth argues that we should quash appellant's appeal as untimely. We disagree. Appellant was granted the right to request an appeal *nunc pro tunc* on September 8, 1980, and filed a petition on January 29, 1981. Although appellant filed after the expiration of the thirty day limit, *see* 42 Pa.C.S.A. § 5571(a) and Pa.R.A.P. 903(a), this Court allowed the appeal *nunc pro tunc* on April 22, 1981, per order requiring the parties to argue in their briefs the issue of the timeliness of the petition to appeal. Both parties have done so. Appellant has explained in his Reply Brief that the five month delay in filing was due solely to "counsel's inadvertence." After the September 8 order, appellant's counsel moved his office and the file, including the completed petition, was misfiled. Appellant's file was not discovered until five months later and, upon discovery, the petition was immediately filed. Because this Court did allow the appeal *nunc pro tunc* and the parties have briefed the issues, we need not quash the appeal as untimely where appellant was not at fault in causing the delay.