COMMONWEALTH of Pennsylvania,
Appellee

v.

Michael ROBINSON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 29, 2001.
Filed July 17, 2001.
Reargument Denied Sept. 18, 2001.

Ramy I. Djerassi, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before: JOHNSON, HUDOCK and KELLY, JJ.

HUDOCK, J.:

¶ 1 This is an appeal *nunc pro tunc* from the order denying Appellant's first petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. sections 9541–46.[1] Pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988), counsel has filed with this Court a brief in which he asks for permission to withdraw as counsel. For the reasons that follow, we affirm the order of the

---

1. The notice of appeal indicates that the appeal is from the judgment of sentence entered May 9, 1995. However, the order entered on February 23, 1999, granting Appellant an appeal *nunc pro tunc*, granted such appeal from the order of June 29, 1998, that denied his PCRA petition. Appellant's brief correctly indicates that the appeal is from the 1998 order. We may address the merits of this appeal despite the inadequacy of the notice of appeal.

*See Commonwealth v. Martin*, 316 Pa.Super. 190, 462 A.2d 859, 860 (1983) (addressing the merits of an appeal where the notice of appeal indicated that the appeal was from a vacated order but the appellant's brief indicated that the appeal was from a later, valid order), *overruled on other grounds, Commonwealth v. Graves*, 510 Pa. 423, 508 A.2d 1198 (1986).

PCRA court and grant counsel leave to withdraw from representation.

¶ 2 At approximately 8:00 p.m. on August 24, 1993, officers of the Philadelphia Police Department responded to a call from an automobile dealership on Essington Avenue. There they found Donrico Sutton (the victim) lying on his side on the floor of the back seat of a Cadillac with gunshot wounds to the chest and left forearm. The victim was transported to Fitzgerald Mercy Hospital where he later died. Appellant, who was at the scene, told Officer Eric Riddick that he and the victim had been standing on the corner of 84th Street and Madison Place when the occupant of a passing vehicle fired a TEC–9 type of weapon at them, hitting the victim. According to Appellant, he then retrieved the Cadillac and pulled the victim into it. He drove to the dealership, ran inside, announced that his friend had been shot, and asked for someone to call the police.

¶ 3 Officer Riddick proceeded with other officers to the 8400 block of Madison Place, and Appellant was transported to Southwest Detectives as a witness. Officers found no evidence on the corner of 84th and Madison consistent with a shooting at that location. They did, however, find blood spatters on the front door and doormat of 8420 Madison, where Appellant lived with his mother and his daughter Amira. They found other drops of blood forming a trail from 8420 Madison to the sidewalk across the street from 8404 Madison.

¶ 4 Following a conversation with six-year-old Otis Toliver, who had been playing football in the street, Officer Riddick alerted his supervisor to treat Appellant as a suspect. Otis Toliver subsequently gave a statement to Detective Dominic Mangoni in which he described Appellant chasing the victim into the street, shooting the victim, dragging the victim into an automobile, and driving off. Four days after the shooting, Detective Manuel Santiago showed Otis a photograph, which Otis correctly identified as the victim. Detective Santiago also showed Otis an array of eight photographs, which included a photograph of Appellant. Otis identified Appellant as Amira's father and the shooter. Otis testified consistently with these statements at the preliminary hearing, but he was unable to point out Appellant in the courtroom. He again testified at trial, this time recognizing Appellant in the courtroom.

¶ 5 Appellant's mother testified that the victim paid Appellant a visit at 8420 Madison on the evening of the shooting. While she was in the kitchen on the telephone at a time she could not recall, Appellant and the victim left through the front door. She then heard a gunshot.

¶ 6 A .38/.357 caliber bullet was recovered from the body of the victim. Officer Karl Rone, who was qualified as a ballistics expert, testified that the bullet would fit a .38 or .357 caliber revolver but not a TEC–9. No weapon was recovered.

¶ 7 A non-jury trial was held in this case on March 6 and March 7, 1995. The trial court found Appellant guilty of voluntary manslaughter and possessing instruments of crime.[2] On May 9, 1995, the trial court imposed an aggregate sentence of seven and one-half to fifteen years' imprisonment. Appellant filed a timely motion for reconsideration of sentence, and, on June 5, 1995, the trial court resentenced him to an aggregate term of seven to fourteen years' imprisonment. Appellant did not take a direct appeal from his judgment of sentence.

---

**2.** 18 Pa.C.S.A. §§ 2503 and 907(a), respectively.

¶ 8 On December 3, 1996, Appellant filed a timely *pro se* PCRA petition on the standard form. In the body of the form, he listed the following issues:

Ineffective Assistance of counsel

Suppression of hears[a]y testimony of Commonwealth witnesses.

Suppression of the Competency hearing/Detective Santiago Violation of Brady, Lively

Suppress the Suggestive Photo array and testimony supporting it.

Suppress the Child[']s [Otis Toliver's] entire testimony based on Competency and Trial, and the Preliminary Hearing.

*Pro Se* PCRA Petition, 12/3/96, at 3. In an attachment to the form, Appellant developed his claims concerning Otis Toliver and Detective Santiago in twenty-nine numbered paragraphs. The attachment concluded with the following paragraph:

30. Of all the issues counsel did preserve through object[ion]s and [duly] noting by the judges, he failed to file one or no post verdict motions that were of arguable merit: suggestive photo array, review the case, tainted competency hearing, hears[a]y testimony of Detective Santiago, the failure of the prosecution to disclose the fact that they held a competency hearing without counsel for the defense or without the benefit of the trier of fact, and failed to disclose this prior to the preliminary hearing, [Officer] Riddick[']s inconsistent testimony or hears[a]y testimony of what he allege[d]ly heard someone say or did not say, and other matter of arguable merit, such as the preliminary hearing Judge Eric L. Lilian who got in on the competency hearing which made his decision tainted because he asked (9) questions to

serve his purpose of his pre-disposed thought to qualify the child any way.

Attachment to *Pro Se* PCRA Petition, 12/3/96, ¶ 30.[3]

¶ 9 The PCRA court appointed Michael G. Floyd, Esquire, to represent Appellant. Mr. Floyd subsequently withdrew, and the court appointed David S. Thalheimer, Esquire. Mr. Thalheimer filed an amended petition in which he developed the following issues:

1. Trial Counsel failed to render effective assistance of counsel in that he failed to adequately challenge the competency of the key Commonwealth witness Otis Toliver, who was five years old at the time of the incident at issue in this case and just six years of age at the time of [Appellant's] trial, and

2. The Trial Court abused its discretion in finding Otis Toliver competent to testify at trial.

Amended PCRA Petition, 2/17/98, at 2. In addition, the prayer for relief in the amended petition incorporated the issues raised in Appellant's *pro se* petition. On June 29, 1998, following proper notice under Rule of Criminal Procedure 1507 (now Rule 907), the PCRA court dismissed Appellant's petition without a hearing. A timely appeal followed, and, on April 28, 1999, this Court dismissed the appeal for failure to file a brief. This Court's order specified that the dismissal was "without prejudice to Appellant's rights under the Post Conviction Relief Act." Mr. Thalheimer subsequently withdrew from the case.

¶ 10 On July 13, 1999, Appellant filed a *pro se* petition on the standard form used for PCRA petitions. In this petition, he again raised the competency issue, asked

---

**3.** The quoted text appears in the original in all upper-case letters. We have rendered it in upper- and lower-case letters for ease of reading. The same holds true for quotations from the notes of testimony.

to have his appeal rights under the PCRA reinstated, and, for the first time, claimed that trial counsel, Gerald Stein, Esquire, was ineffective for failing to file a notice of appeal from the judgment of sentence. On August 2, 1999, the PCRA court dismissed this petition as untimely, and no appeal was taken.

¶ 11 On November 23, 1999, Appellant filed another *pro se* petition on the standard PCRA form. In this petition, he asserted that trial counsel was ineffective for failing to file a notice of appeal from the judgment of sentence, and that PCRA counsel was ineffective for failing to file an appellate brief. Attached to the petition was the thirty-paragraph supplement to his original *pro se* petition. On February 23, 2000, the PCRA court entered an order that vacated its order of August 2, 1999, granted Appellant an appeal *nunc pro tunc* from its order of June 29, 1998, and appointed Mr. Stein to represent Appellant. On March 14, 2000, the Administrative Judge entered an order appointing current counsel, Ramy Djerassi, Esquire, to represent Appellant. On April 20, 2000, Mr. Djerassi filed a notice of appeal *nunc pro tunc* from the judgment of sentence. *See supra* n. 1.

¶ 12 On August 1, 2000, this Court directed Appellant to show cause why this appeal should not be quashed as untimely since the appeal was filed on April 20, 2000, from the order of March 14, 2000. Appellant responded, claiming that the delay was caused by an "administrative breakdown" in counsel's office. Response, 8/11/00, at 2. Appellant describes the breakdown as follows:

> On April 12, 2000, Mr. Djerassi prepared a Notice of Appeal, Proof of Service and Verified Statements for filing the next day. At the time, Mr. Djerassi was working with temporary secretarial help. A secretary scheduled for Thurs-day, April 13, 2000 did not arrive as scheduled and Mr. Djerassi was away from his office the entire day.
>
> On April 14, 2000, Mr. Djerassi was able in the afternoon to prepare the documents himself and he filed them himself on Monday, April 20, 2000.

*Id.* at 1–2.

¶ 13 This Court considered an appeal *nunc pro tunc* under similar circumstances in *Commonwealth v. Moore*, 321 Pa.Super. 1, 467 A.2d 862 (1983). In *Moore*, the appellant was granted the right to request an appeal *nunc pro tunc* on September 8, 1980, and filed a petition on January 29, 1981. We proceeded as follows:

> Although appellant filed after the expiration of the thirty day limit, *see* 42 Pa.C.S.A. § 5571(a) and Pa.R.A.P. 903(a), this Court allowed the appeal *nunc pro tunc* on April 22, 1981, per order requiring the parties to argue in their briefs the issue of the timeliness of the petition to appeal. Both parties have done so. Appellant has explained in his Reply Brief that the five month delay was due solely to "counsel's inadvertence." After the September 8 order, appellant's counsel moved his office and the file, including the completed petition, was misfiled. Appellant's file was not discovered until five months later and, upon discovery, the petition was immediately filed. Because this Court did allow the appeal *nunc pro tunc* and the parties have briefed the issues, we need not quash the appeal as untimely where appellant was not at fault in causing the delay.

*Moore*, 467 A.2d at 867 n. 5. In the instant case, this Court directed Appellant to show cause why the appeal should not be quashed as untimely, but allowed the appeal to proceed in the meantime. The parties have filed briefs. Because this Court allowed the appeal to proceed, the

parties have submitted briefs, and, because Appellant was not at fault, we need not quash this appeal as untimely.

¶ 14 Before we can reach the merits of this appeal, however, we must address the Commonwealth's contention that it must be dismissed because Appellant's PCRA petition was untimely. Unless certain exceptions apply, a petition for relief under the PCRA must be filed within one year of the date on which the petitioner's judgment of sentence becomes final. 42 Pa. C.S.A. § 9545(b)(1). For first-time petitioners whose judgments of sentence became final on or before January 16, 1996, that period was extended to January 16, 1997. *Commonwealth v. Fenati*, 561 Pa. 106, 748 A.2d 205 (2000). A judgment of sentence becomes final at the conclusion of direct review or at the expiration of time for seeking review. 42 Pa.C.S.A. § 9545(b)(3). These timing provisions apply to all PCRA petitions regardless of the nature of the claims raised therein. *Commonwealth v. Carr*, 768 A.2d 1164, 1167 (Pa.Super.2001).

¶ 15 The Commonwealth argues that the petition by which Appellant obtained this appeal was his third and that it was untimely because it was filed on November 23, 1999, which was over a year after his judgment of sentence became final on July 5, 1995.[4] This argument overlooks this Court's opinions in *Commonwealth v. Leasa*, 759 A.2d 941 (Pa.Super.2000), and *Commonwealth v. Peterson*, 756 A.2d 687 (Pa.Super.2000). In *Leasa*, we held that a "second" PCRA petition requesting reinstatement of appeal rights as to the order dismissing the petitioner's first petition would be considered merely an extension of the litigation of the petitioner's first PCRA petition where the appeal from the

denial of the first petition was dismissed because of counsel's failure to file a brief. 759 A.2d at 941–42. In *Peterson*, we held that a "second" petition raising the same issues as the petitioner's first petition would be treated as an extension of his first petition where his appeal from the denial of his first petition was dismissed because of counsel's failure to file a brief. 756 A.2d at 688–89.

¶ 16 In the instant case, this Court dismissed Appellant's appeal from the denial of his first PCRA petition because counsel failed to file a brief. On July 13, 1999, Appellant filed a *pro se* petition seeking reinstatement of his PCRA appeal rights, raising the competency issue he had raised in his first petition, and raising for the first time the issue of trial counsel's failure to file a direct appeal. The PCRA court dismissed this petition as untimely, and on November 23, 1999, Appellant filed another petition, this time asserting that trial counsel was ineffective for failing to file a direct appeal and that PCRA counsel was ineffective for failing to file an appellate brief. He also reasserted the issues he raised in his original *pro se* petition. The PCRA court reinstated Appellant's right of appeal from the denial of his first petition.

■ ¶ 17 Like the petitioners in *Leasa* and *Peterson*, Appellant had his appeal from his first PCRA petition dismissed because counsel failed to file a brief. His "second" and "third" petitions, like the petitions in *Leasa*, sought reinstatement of his appeal rights. His "second" petition, like the petition in *Peterson*, raised an issue (the competency issue) he had raised in his first petition. Also like the petition in *Peterson*, Appellant's "third" petition reasserted the issues raised in the first

---

4. Appellant was resentenced on June 5, 1995, and did not take an appeal to this Court. His time for doing so expired thirty days later, on

July 5, 1995. Pa.R.Crim.P. 1410(A)(2)(a) (now Pa.R.Crim.P. 720(A)(2)(a)).

petition. However, unlike the petitioners in *Leasa* and *Peterson,* Appellant did not limit his petitions to those issues; he raised the additional issue of trial counsel's ineffectiveness for failing to perfect a direct appeal.

■ ¶ 18 But for the presence of this additional issue, *Leasa* and *Peterson* would control the instant case and Appellant's "second" and "third" petitions would be considered extensions of his first. We conclude that the presence of the additional issue does not sever the subsequent petitions from the first in their entireties. Rather, we hold that the subsequent petitions should be considered extensions of the first to the extent they reassert the issues raised in the first petition or seek reinstatement of the appeal from the first petition. To the extent they raise a new issue or issues, they must be treated as separate petitions. Thus, we conclude that this appeal is properly before us. We also conclude that Appellant did not timely raise the issue of trial counsel's failure to perfect a direct appeal because he did not raise this issue within one year after his judgment of sentence became final and he has not asserted any of the exceptions to the one-year period. *See Carr, supra* (holding that a PCRA petition raising the issue of counsel's ineffectiveness for failing to perfect a direct appeal was untimely because it was filed over one year after the judgment of sentence became final and the appellant failed to plead and prove that any of the exceptions applied).

■ ¶ 19 Pursuant to *Turner* and *Finley,* counsel has filed with this Court a brief in which he asks for permission to withdraw as counsel.

When seeking leave to withdraw representation from a collateral appeal, counsel must file a "no-merit" letter that (1) details the nature and extent of counsel's review[,] (2) lists each issue the petitioner wishes to raise, and (3) explains why those issues lack merit. Once counsel has complied with these requirements, withdrawal will be permitted if, after independent review, we conclude that the issues raised by appellant do not support a grant of relief (*i.e.,* the issues lack merit).

*Commonwealth v. Schultz,* 707 A.2d 513, 516 (Pa.Super.1997) (citations omitted). Counsel has detailed the nature and extent of his review thus:

Counsel has conducted a thorough search of the record and consulted legal authority. He has reviewed transcripts and documents relating to trial and collateral proceedings. He has reviewed the issues raised by PCRA counsel David Thalheimer, Esq. and the PCRA Court's Opinion denying relief. Counsel has also reviewed [Appellant's] *pro se* enclosure submitted with his second *pro se* Petition for PCRA relief. He has also reviewed correspondence from [Appellant].

*Turner/Finley* Brief at 5. Counsel has set forth Appellant's issues concerning Otis Toliver's trial testimony and the testimony of Detective Santiago and has explained why they lack merit. Counsel has also listed an issue concerning the legality of Appellant's arrest and explained why it lacks merit. However, counsel has failed to list and explain the lack of merit of Appellant's remaining issues, *i.e.,* trial counsel's ineffectiveness in failing to preserve challenges to (1) alleged errors in the preliminary hearing, (2) "the failure of the prosecution to disclose the fact that they held a competency hearing without counsel for the defense or without the benefit of the trier of fact, and failed to disclose this prior to the preliminary hearing," (3) an allegedly suggestive photo array, and (4) inconsistencies and hearsay in Officer Riddick's testimony. Thus, counsel

has failed to meet the procedural requirements for withdrawal under *Turner* and *Finley*. Nevertheless, because our review of the record has shown these issues to be utterly lacking in merit, "we see no valid substantive or administrative justification to further delay disposition of this frivolous appeal." *Commonwealth v. Harris,* 381 Pa.Super. 206, 553 A.2d 428, 434 (1989). The frivolousness of the four unaddressed issues ensures that counsel's noncompliance did not jeopardize any *substantive* interests. As we said in *Harris:*

Though *administrative* interests were clearly prejudiced by counsel's non-compliance with the minimum documentation requisites of *Turner* and *Finley,* we find no reason to delay disposition of this frivolous appeal on that basis. The judicial resources needlessly expended as the result of appellate counsel's failure to document his review of the record will not be recouped by prolonging the odyssey of this case through the courts of this Commonwealth. Remand for a new No Merit Letter would elevate form over both substantive and administrative interests and in accordance with the general policy propounded by our Supreme Court in Pa.R.A.P. 105 and Pa. R.Crim.P. 2 & 150 [now Pa.R.Crim.P. 101 & 109, respectively]—we decline to do so.

*Id.* (footnote omitted). We now turn to an independent review of Appellant's PCRA petition.

■■ ¶ 20 Initially, we must consider the effect of Appellant's failure to pursue a direct appeal. In *Commonwealth v. Lehr,* 400 Pa.Super. 514, 583 A.2d 1234, 1235 (1990), this Court stated, "Ordinarily, absent extraordinary circumstances, the failure to file a direct appeal from a judgment of sentence amounts to waiver of any claim which could have been raised in such an appeal, thereby precluding collateral relief." In *Commonwealth v. Knighten,* 742 A.2d 679 (Pa.Super.1999), *appeal denied,* 563 Pa. 659, 759 A.2d 383 (2000), we explained this statement as follows:

[W]e do not construe this general statement as contravening the long-standing proposition that a claim of ineffective assistance of counsel properly is preserved if it is raised at the first opportunity that the petitioner is represented by new counsel. If a petitioner's trial and appellate counsel are the same, counsel is not required to assert his own ineffectiveness in post-verdict or direct appeal proceedings. Therefore, if there is no intervening substitution of counsel, there is no waiver of claims of ineffective assistance of counsel by virtue of the failure to raise them on direct appeal.

742 A.2d at 682–83 (citations omitted). Instantly, Appellant has couched all but one of his issues in terms of ineffectiveness of trial counsel.[5] Because there was no substitution of counsel between Appellant's sentencing and the filing of his PCRA petition, he did not waive his claims of ineffectiveness of trial counsel. Only the claim of trial court error is waived.

■ ¶ 21 "Our review of a PCRA court's grant or denial of relief is limited to examining whether the court's determination is supported by the evidence and whether it is free of legal error." *Commonwealth v. Davis,* 760 A.2d 406, 409 (Pa.Super.2000), *appeal denied,* 525 Pa. 595, 575 A.2d 561, 2001 Pa. Lexis 922 (2001). To be eligible for relief under the PCRA, a petitioner claiming ineffectiveness of counsel must plead and prove by a

---

**5.** The lone exception is the second issue in his amended petition, "The Trial Court abused its discretion in finding Otis Toliver competent to testify at trial." Amended PCRA Petition, 2/17/98, at 2.

161

preponderance of the evidence "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S.A. § 9543(a)(2)(ii). Our Supreme Court has held that this is not a higher standard than that employed on direct appeal. *Commonwealth v. Kimball,* 555 Pa. 299, 306, 724 A.2d 326, 330 (1999). On direct appeal, and, thus, under the PCRA, the following standards govern our review. Counsel is presumed to have been effective and the burden of proving counsel's ineffectiveness rests on the appellant. *Commonwealth v. Cox,* 556 Pa. 368, 382, 728 A.2d 923, 929 (1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 2246, 150 L.Ed.2d 233, 2001 U.S. Lexis 4370 (2001). An appellant must prove (1) that the underlying claim has arguable merit, (2) that counsel's conduct was without a reasonable basis designed to effectuate his or her client's interest, and (3) that counsel's ineffectiveness prejudiced the appellant. *Commonwealth v. Wallace,* 555 Pa. 397, 407, 724 A.2d 916, 921 (1999). To meet the prejudice prong, the appellant must show that there is a reasonable probability that, but for the act or omission in question, the outcome of the proceeding would have been different. *Id.*

¶ 22 The first issue we will address is Appellant's claim that trial counsel was ineffective for failing to preserve challenges to alleged errors at the preliminary hearing. It is well settled that "once a defendant has gone to trial and has been found guilty of a crime, any alleged defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Kelley,* 444 Pa.Super. 377, 664 A.2d 123, 127 (1995). This claim, therefore, cannot serve as a basis for relief on collateral review.

¶ 23 Next, we address Appellant's assertion that counsel was ineffective in connection with "the failure of the prosecution to disclose the fact that they held a competency hearing without counsel for the defense or without the benefit of the trier of fact, and failed to disclose this prior to the preliminary hearing." Attachment to *Pro Se* PCRA Petition, 12/3/96, ¶ 30. This is a reference to a session in which Assistant District Attorney Joseph LaBar brought Otis Toliver into a courtroom in order to prepare him for what he would face at the preliminary hearing. *See* N.T., 10/13/93, at 47–52. We have carefully reviewed the certified record and have found no indication whatsoever that the Commonwealth in this or any other preparation session attempted to influence Otis' testimony in any way other than to urge upon him the importance of telling the truth. *See* N.T., 3/7/95, at 155, 157–58. Trial counsel argued that the preparation sessions rendered Otis incompetent to testify, but the trial court correctly noted that the sessions went to the weight of the evidence rather than its admissibility. *Id.* at 163. Counsel cannot be faulted for failing to pursue this meritless claim any further. *See Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237, 1243 (1988) (counsel may not be deemed ineffective for failing to assert a meritless claim).

¶ 24 We turn next to Appellant's claim that trial counsel was ineffective for failing to challenge as suggestive the photo array shown to Otis Toliver. "A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." *Commonwealth v. Fisher,* 564 Pa. 505, 522, 769 A.2d 1116, 1126 (2001). "Photographs used in lineups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Id.* at 522, 769 A.2d at 1126. We have carefully examined the

photo array shown to Otis Toliver, and we conclude that it is not unduly suggestive. Appellant's picture does not stand out more than the others, and the people depicted all exhibit similar characteristics. All are African–American males with close-cropped hair, and all have facial hair of some sort, again close cropped. In addition, there was no suggestiveness in the procedure by which the photographs were presented to Otis. Detective Santiago merely placed the array in front of Otis and asked, "Do you recognize anyone?" N.T., 3/7/95, at 220. Otis answered, "Number 5 looks like Amira's dad. Amira lives with her grandmother on Madison Street." *Id.* Detective Santiago followed up by asking, "Who is Amira's dad?" *Id.* at 220–21. Otis responded, "Amira's dad is the guy who shot the man on Madison Street." *Id.* at 221. Because neither the array itself nor the mode of its presentation to Oliver was suggestive, counsel cannot be considered ineffective for failing to raise this issue. *See Groff, supra.*

¶ 25 Next, we address Appellant's complaint regarding alleged inconsistencies and hearsay in Officer Riddick's testimony. When Appellant speaks of inconsistencies in Officer Riddick's testimony, he is referring to inconsistencies between Officer Riddick's testimony at trial and Officer Riddick's statement to a detective on the night of the incident. At trial, Officer Riddick testified on direct that Appellant said that he and the victim were standing on the "southwest corner" of 84th and Madison when one of the occupants of a black Granada "stuck a TEC–9 type weapon out the door and started to fire." N.T., 3/6/95, at 28. Trial counsel cross-examined Officer Riddick about the earlier statement in which Officer Riddick told the detective that Appellant had said that he and the victim were standing on "the corner of 84th and Madison when a black Granada occupied by 4 black males pulled up to them and someone from the Granada started to fire a TEC–9 type of weapon." *Id.* at 59–60.[6]

¶ 26 Appellant's claim that trial counsel was ineffective for not objecting to Officer Riddick's testimony on the basis of these alleged inconsistencies must fail for two reasons. First, the statements are not inconsistent; the trial testimony merely contains additional details not found in the earlier statement. *Cf. Commonwealth v. Washington,* 549 Pa. 12, 34 & n. 17, 700 A.2d 400, 411 & n. 17 (1997) (omissions of facts from prior statements do not render them inconsistent statements for purposes of impeachment). Second, testimonial inconsistencies go to weight and not admissibility. *Commonwealth v. Fletcher,* 561 Pa. 266, 296, 750 A.2d 261, 277 (2000), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); *Commonwealth v. Douglas,* 461 Pa. 749, 758, 337 A.2d 860, 865 (1975).

¶ 27 Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. *Heddings v. Steele,* 514 Pa. 569, 573, 526 A.2d 349, 351 (1987). Hearsay is inadmissible unless an exception applies. *Id.* at 574, 526 A.2d at

---

6. Trial counsel also cross-examined Officer Riddick about what counsel believed to be another inconsistency. Counsel apparently thought that Officer Riddick testified that Appellant told him that the victim had said, "I'm hit, I'm hit." N.T., 3/6/95, at 63. Counsel elicited from Officer Riddick an admission that he told the detective that Appellant had said that the victim's words were, "Mike, I'm hit. Mike, I'm hit." *Id.* Our review of the transcript indicates that Officer Riddick, in fact, testified that Appellant said that the victim's words were, "Mike, I'm hit, I'm hit." *Id.* at 28. To the extent that this minor difference can be considered an inconsistency, it goes to the weight to be accorded this testimony, not its admissibility, as we explain in the next paragraph.

352. This is true regardless of whether the hearsay statement is presented directly (*e.g.*, "The declarant told me . . . .") or indirectly (*e.g.*, "As a result of what the declarant told me, I did . . . ."). *Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486, 488–89 (1977).

 ¶ 28 We have carefully reviewed Officer Riddick's testimony and have found four out-of-court statements to which he testified. We will address them seriatim. The first follows:

> Q. When you heard this information [Appellant's story that someone in a black Granada had shot at him and the victim while they were standing on the corner of 84th and Madison], what did you do?
>
> A. At this point, I relayed it to other police.
>
> At this time, another radio call had came out for 8400 block of Madison. And that we had the car here, you know, the people that were shot at, or the people were shot.

N.T., 3/6/95, at 29. For two reasons, Appellant is not entitled to any relief based on the admission of this statement. First, it is not hearsay. "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible on the basis that they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." *Commonwealth v. Jones*, 540 Pa. 442, 451, 658 A.2d 746, 751 (1995). Second, the statement is in no way prejudicial to Appellant, as it does not inculpate him. In fact, it is entirely consistent with the story he told Officer Riddick.

 ¶ 29 The Commonwealth adduced the following testimony regarding Officer Riddick's actions after he arrived at the scene of the shooting:

> Q. I'm not going to ask you what [Otis] said right now because Otis is going to testify in a few moments.
>
> Based upon what he told you then, what did you do?
>
> A. I alerted the supervisor to let the radio patrol car 1211 treat that guy as a possible doer.
>
> THE COURT: Which guy?
>
> THE WITNESS: [Appellant].

N.T., 3/6/95, at 36. This testimony is the functional equivalent of having Officer Riddick testify that Oliver told him that Appellant shot the victim. *See Farris, supra.* Even so, we conclude, based on *Jones, supra,* that no relief is due. In *Jones,* statements directly implicating the appellant in a killing were admitted on the basis that they were offered to explain the information on which police acted. In holding that the trial court did not abuse its discretion in allowing this testimony, our Supreme Court noted that the appellant based his defense on the possibility that someone else was the killer and sought to advance that defense by attacking the adequacy of the police investigation. The Court found that this defense strategy made it necessary to provide extensive testimony about the course of the investigation. The Court also relied on the fact that the declarant testified at trial. The Court explained:

> In cases where the third party declarant did not testify, the concern is that by allowing police to testify regarding the declarant's statements, the statements might be taken by the **jury** as substantive evidence of guilt without there having been an opportunity to cross-examine the declarant. But such a concern is not present, where, as in this case, the declarant did in fact testify and the subsequent police testimony merely related matters that were covered in the declarant's own testimony.

*Jones,* 540 Pa. at 452, 658 A.2d at 751 (emphasis added; citations omitted). In the instant case, trial counsel employed a defense strategy similar to that used in *Jones,* and the declarant, Otis Toliver, testified, albeit after Officer Riddick. Given these similarities to *Jones,* and the fact that Appellant was tried by a judge rather than a jury, we conclude that no relief is due on the basis of this testimony. *See In Interest of J.H.,* 737 A.2d 275, 279 (Pa.Super.1999), *appeal denied,* 562 Pa. 671, 753 A.2d 819 (2000) (holding that a trial judge is presumed to consider evidence for its proper purpose only).

¶ 30 Officer Riddick also testified that a trail of blood led from 8420 Madison towards 84th Street. The direction of the trail of blood was significant because Appellant's version of events indicated that the trail should have run in the opposite direction. On cross-examination, defense counsel elicited from Officer Riddick an admission that his testimony regarding the trail's direction was based not on personal observations but on information "received from people that were out there." N.T., 3/6/95, at 71. During this cross-examination, the following exchange occurred:

Q. I'm asking you, you, what you know. We don't need you to add in what other people told you.

THE COURT: I think he is doing his best to tell you exactly what he knows.

MR. STEIN: I understand; but I'm trying to weed out his conclusions from hearsay—

THE COURT: Right; I understand.

MR. STEIN:—or from his own—

THE COURT: Observations; right.

*Id.* at 72. This exchange demonstrates that the trial court understood counsel's point that Officer Riddick's testimony regarding the direction of the blood trail was hearsay. Thus, we presume that the trial court disregarded that testimony, *see J.H.,*

*supra,* and we conclude that no relief is due on the basis of this testimony.

¶ 31 Finally, counsel for the Commonwealth read into the record a portion of Officer Riddick's preliminary hearing testimony concerning Appellant's statement to him. Counsel for the Commonwealth explained that she was offering the evidence to show that Officer Riddick had previously testified that Appellant stated that he and the victim were standing on the southwest corner of 84th and Madison and that the TEC–9 was outside the vehicle.

MS. PONTERIO [COUNSEL FOR THE COMMONWEALTH]: .... I just wanted to bring that out, that this isn't the first time he said it.

THE COURT: I understand that; but Mr. Stein cross-examined him on that.

MR. STEIN: Right; and he is saying that what he said about "southwest corner" is his—

THE COURT: His interpretation.

MR. STEIN:—his interpretation.

MS. PONTERIO: What I want you to know is, this is not the first time he said it.

THE COURT: All right. Okay. Fine.

MR. STEIN: Good. He can say it a hundred times. It doesn't change the fact that that's his conclusion.

THE COURT: That's right.

N.T., 3/6/95, at 78–79. It is clear that the evidence at issue was neither offered to prove the truth of the matters asserted nor accepted for that purpose. Therefore, any claim that this evidence constituted inadmissible hearsay would be meritless.

¶ 32 Next, we consider Appellant's claim that trial counsel was ineffective for failing to pursue the issue of the competency of Otis Toliver.

In evaluating the competency of a child witness, a court is guided by the following principles:

> [C]ompetency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959); *Commonwealth v. Mangello,* [250 Pa.Super. 202, 378 A.2d 897 (1977)]. When the witness is under fourteen years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency.

*Commonwealth v. Short,* 278 Pa.Super. 581, 586, 420 A.2d 694, 696 (1980). *See also: Commonwealth v. Stohr,* 361 Pa.Super. 293, 296, 522 A.2d 589, 591 (1987) (en banc). The required inquiry must determine whether the child possesses

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering ·what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth.

*Rosche v. McCoy,* 397 Pa. 615, 620–621, 156 A.2d 307, 310 (1959).

*Commonwealth v. McMaster,* 446 Pa.Super. 261, 666 A.2d 724, 727 (1995). In addition, "[i]t is appropriate for an appellate court to look not only to the trial court's questioning of the child prior to the child testifying, but also to the child's actual testimony." *Commonwealth v. Trimble,* 419 Pa.Super. 108, 615 A.2d 48, 51 (1992). In argument following the trial court's *voir dire* of Otis, defense counsel challenged Otis' competency on grounds that his hav-ing been through numerous preparation sessions made it impossible to evaluate his competency. In his amended PCRA petition, Appellant claimed that trial counsel was ineffective for failing to object to Otis' testimony on grounds that inconsistencies in Otis' preliminary hearing testimony and discrepancies between that testimony and his trial testimony demonstrated that Otis lacked the mental capacity to observe the occurrence itself and the capacity to remember what he was called to testify about. Appellant listed the following points as evidence of Otis' lack of capacity:

1) The inability to recognize petitioner in the courtroom despite allegedly having seen him on numerous prior occasions. (N.T. 10/13/93, pp. 61–66).

2) Testimony that he observed more tha[n] one person with a gun at the time of the shooting. (N.T. 10/13/93, p. 63). No other evidence offered by the Commonwealth either as discovery or at trial supports such an "observation" and this claim flies in the face of the Commonwealth's theory that only petitioner had a gun.

3) Reference to multiple persons placing decedent in the car in which police later discovered him. *Id.* Again, this is contrary to all evidence adduced in the case and the Commonwealth's own theory of the case.

4) The inability to recall, even as an approximation the amount of time that had passed between the incident at issue and his having been shown a photo spread by police. (N.T. 10/13/93, p. 71).

5) The inability to correctly recall if, subsequent to the shooting he had identified photographs allegedly depicting the gunman, the victim or both. (N.T. 10/13/93, pp. 66–69).

6) The claim that he witnessed this shooting at issue from a distance of seven miles away. (N.T. 10/13/93, pp. 73).

\* \* \*

7) At the time of the shooting he had already met his first grade teacher. (N.T. 3/7/95 p. 157). At the time of the incident, the witness, who testified that he did not attend kindergarten was not yet old enough to have been in the first grade.

8) He had seen only one man with a gun. (N.T. 3/7/95, p. 164). As discussed above, he had claimed at the preliminary hearing that he had seen more than one person with a gun.

9) He had heard two gunshots, one having originated in [Appellant's] house and one outside of the house. (N.T. 3/7/95, pp. 166–167). At the preliminary hearing Otis had claimed to have heard and seen only one shot. *Id.*

10) He was located at a driveway next to [Appellant's] house at the time of the shooting. At the preliminary hearing he recalled that he was several houses farther away from the scene. (N.T., 3/7/95, pp. 176–180).

Amended PCRA Petition, 2/17/98, at 3. We will address these points seriatim.

¶ 33 Otis' inability to point out Appellant at the preliminary hearing casts some doubt on his mental capacity to observe the occurrence itself and his capacity to remember it. However, this inability cannot be viewed in isolation. Otis consistently named Appellant as the shooter. He did so immediately after the shooting, and four days later he selected Appellant's photograph from an array and identified him as the shooter. In addition, he named Appellant as the shooter at the preliminary hearing and at trial. At trial, Otis also identified Appellant without hesitation. Viewed in this context, his failure to point out Appellant at the preliminary hearing cannot be held to demonstrate that he was incompetent to testify.

¶ 34 Appellant's second and third points mischaracterize Otis' testimony. Contrary to what Appellant alleges, Otis did not mention anyone but Appellant possessing a gun, and he testified that Appellant dragged the victim into the automobile. Thus, these points and the related eighth point cannot support a finding of incompetence.

¶ 35 The fourth and fifth points concern Otis' inability to recall details of his identification of Appellant in the photo array. Otis' inability to recall the details of one of many police interviews to which he was subjected casts no doubt on his ability to recall the shooting. A shooting is a much more shocking and dramatic event than a police interview. It is simply not surprising that the shooting should have lodged itself more firmly in Otis' memory than one of a number of statements he gave to the police. Indeed, such a divergence would not be surprising in an adult witness. Therefore, these points do not support a finding of incompetence.

¶ 36 Turning to the sixth point, we note that the preliminary hearing transcript does show that Otis testified at one point that he was seven miles away from the shooting. However, it is clear from the remainder of Otis' testimony that he was actually within a block of the shooting; his statement that he was seven miles away simply reflected confusion about how to express distances. The fact that Otis exhibited such confusion a year and a half before he testified at trial casts no doubt on his mental capacity to observe the shooting or his capacity to remember it.

¶ 37 Appellant's seventh point is that Otis testified that he was in first grade at the time of the shooting although, according to Appellant, the child was not yet old enough to be in the first grade. This contention is belied by the record. Otis was born on August 3, 1987. Thus, he had just turned six when the shooting occurred on August 24, 1993, and he was seven years old when he testified at trial on March 7, 1995. He testified at trial that he was currently in the second grade. It follows that he was in the first grade the preceding school year, which would have begun around the time of the shooting.

¶ 38 Having disposed of Appellant's eighth contention above, we turn to his ninth. Here, Appellant claims that, although Otis testified at trial that there were two shots, Otis "claimed" at the preliminary hearing "to have heard and seen only one shot." Amended PCRA Petition, 2/17/98, at 3. Once again, Appellant misrepresents the record. At the preliminary hearing, Otis was asked only about what he **saw**, and he testified that he saw Appellant chase the victim out of the house and shoot the victim in the street. He never said that there was only one shot. At trial, he testified that he heard a shot come from inside the house and that he subsequently saw Appellant shoot the victim in the street. Thus, we find no inconsistency on this point between Otis' preliminary hearing testimony and his trial testimony. *Cf. Washington,* 549 Pa. at 34 & n. 17, 700 A.2d at 411 & n. 17 (omissions of facts from prior statements do not render them inconsistent statements for purposes of impeachment).

¶ 39 Appellant's tenth and final assertion regarding Otis' competency is that Otis' preliminary hearing and trial testimony differed regarding the spot from which he witnessed the shooting. Our review of the record reveals that there are inconsistencies in Otis' testimony on this point, but we view them as minor. We have held that minor inconsistencies are not sufficient bases to find a child witness incompetent. *Commonwealth v. Davis,* 394 Pa.Super. 591, 576 A.2d 1005, 1009 (1990), *rev'd on other grounds,* 532 Pa. 297, 615 A.2d 732 (1992). Thus, we conclude that Otis' inconsistencies on this point do not demonstrate that he was incompetent to testify.

¶ 40 In summary, Appellant presents the following as evidence of Otis' alleged incompetence: Otis failed to point out Appellant at the preliminary hearing; he could not recall choosing Appellant's photograph from the array; he incorrectly asserted at the preliminary hearing that he was seven miles from the shooting; and he presented inconsistent testimony regarding the spot from which he viewed the shooting. We concluded above that none of these pieces of evidence individually supports a finding of incompetence. Viewing them together, in the context of Otis' entire testimony, we conclude that they do not collectively support a finding of incompetence. Trial counsel cannot be held ineffective for failing to pursue this meritless claim. *See Groff, supra.*

¶ 41 Next, we address Appellant's claim that trial counsel was ineffective for failing to object to the introduction of Otis' statement to Detective Santiago. Otis gave the statement within days of the shooting. In the statement, Otis selected Appellant's photograph from the array and identified him as Amira's father and as the shooter.

¶ 42 Prior consistent statements may be offered to rehabilitate a witness whose credibility has been impeached by a charge of recent fabrication or faulty memory. *Commonwealth v. Swinson,* 426 Pa.Super. 167, 626 A.2d 627, 632–33 (1993). Instantly, defense counsel impeached Otis' credibility by introducing

the fact that Otis had failed to point out Appellant at the preliminary hearing. The statement to Detective Santiago was offered as a prior consistent statement to rehabilitate the witness, and it was admissible for that purpose. Because this claim lacks arguable merit, counsel cannot be held ineffective for failing to pursue it. *See Groff, supra.*[7]

¶ 43 Finally, counsel addresses Appellant's *"pro se* claim that police had no probable cause to arrest him." *Turner/Finley* Brief at 8. We have reviewed Appellant's original *pro se* petition and his counseled amended petition, but we are unable to find any mention of this issue. Therefore, this claim is waived. *Knighten,* 742 A.2d at 683.

¶ 44 Having found Appellant's claims either waived or devoid of merit, we affirm the order denying PCRA relief, and we grant counsel's motion to withdraw from representation.

¶ 45 Order affirmed. Motion to withdraw granted.

---

7. In his original *pro se* petition, Appellant also asserted that trial counsel was ineffective for failing to challenge Detective Santiago's testimony as a violation of *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986), *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), and *Commonwealth v. Burgos,* 530 Pa. 473, 610 A.2d 11 (1992). Those cases are inapposite, however, as they deal with the substantive use of prior inconsistent statements. Additionally, we note that our analysis of Otis' statement to Detective Santiago applies equally to Otis' statement to Detective Mangoni.