COMMONWEALTH of Pennsylvania,
Appellee

v.

Thomas W. DRUCE, III, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 11, 2001.

Filed March 15, 2002.

Reargument Denied May 15, 2002.

[redacted]

[redacted]

[redacted]

William H. Lamb, West Chester, for appellant.

Edward M. Marsico, Dist. Atty., Dauphin, for Com., appellee.

BEFORE: CAVANAUGH, STEVENS, and BECK, JJ.

BECK, J.:

¶ 1 In this case we decide whether a sentencing judge's comments to the press were sufficient to constitute an appearance of impropriety and so warrant the judge's recusal from the matter. In addition, we consider whether the sentencing court abused its discretion in fashioning appellant's punishment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Appellant is Thomas W. Druce, III, a prominent figure in state politics and, until mid–2000, an eight-year member of the Pennsylvania House of Representatives. In September of 2000, appellant pled guilty to a number of charges filed against him in connection with the death of Kenneth Cains. On July 27, 1999 at approximately 10:30 PM, appellant was driving his Jeep Grand Cherokee on Cameron Street in Harrisburg when he struck Mr. Cains as he was walking along the street. Appellant did not stop at the accident scene, but rather continued driving through town. The injuries Mr. Cains suffered as a result of the impact were fatal.

¶ 3 A police investigation into the accident initially yielded no results. Approximately five months later, Dauphin County law enforcement authorities received an anonymous tip that appellant was involved. In January of 2000, investigators interviewed appellant. According to the affidavit of probable cause, appellant confirmed to police that "he struck something at that location [Cameron Street], ... indicated that he was looking down toward the passenger seat at the time of the collision ... [and] thought he had struck a sign." Appellant further admitted to police that he made a claim to his automobile insurance company, declaring that he was involved in an automobile accident on that night, but at a different location.

¶ 4 Although there are a number of statements recited in the trial court's opinion that appellant challenges, and these challenges form the basis of one or more of appellant's claims in this appeal, it appears

that the following facts are undisputed.[1] First, within hours of the incident appellant stopped at a convenience store, bought duct tape and made some repairs to his Jeep. Second, the day after the incident appellant told his insurance company that he was involved in an accident while driving on the Pennsylvania Turnpike and that the accident caused damage to his Jeep. Third, in the days following the incident, appellant brought his Jeep to an auto repair shop and requested prompt repair of the damage, which included a cracked windshield. Fourth, appellant traded in his Jeep after the repairs were accomplished and leased a new vehicle. Fifth, two of appellant's colleagues asked him whether it was his vehicle that was involved in the Cameron Street accident and appellant replied that it was not.

## A. Charges

¶ 5 Appellant was formally charged with the following offenses on January 19, 2000:

Homicide by Vehicle, 75 Pa.C.S.A. § 3732;

Accidents Involving Death or Personal Injury, 75 Pa.C.S.A. § 3742;

Tampering With or Fabricating Physical Evidence, 18 Pa.C.S.A. § 4910(1);

Insurance Fraud, 18 Pa.C.S.A. § 4117;

Careless Driving, 75 Pa.C.S.A. § 3714 (summary offense);

Driving Vehicle at Safe Speed, 75 Pa. C.S.A. § 3361 (summary offense);

Immediate Notice of Accident to Police, 75 Pa.C.S.A. § 3746 (summary offense); and

Duty to Give Information and Render Aid, 75 Pa.C.S.A. § 3744 (summary offense)

¶ 6 Appellant waived his preliminary hearing and the court set a date for trial. At a June, 2000 pre-trial hearing on issues appellant raised in an omnibus motion,[2] counsel for appellant asserted that § 3742, leaving the scene of an accident involving death or personal injury, was unconstitutional. The parties and the trial judge, President Judge Joseph H. Kleinfelter, engaged in a discussion about the elements of § 3742, specifically whether the statute required that the defendant be aware of or know that the accident caused or involved personal injury or death. Appellant's counsel argued that the statute made no such requirement and its failure to do so made it constitutionally infirm. The Commonwealth disagreed.[3] As appellant observes in his brief, the transcript indicates that the parties disagreed about what state of mind was necessary for a conviction of § 3742. The following ex-

1. As discussed *infra,* some of these facts, while not disputed, are given further explanation by appellant in his brief.

2. Appellant sought a change of venue and dismissal of the homicide by vehicle and insurance fraud charges. The basis for the dismissal requests was insufficient evidence to establish a *prima facie* case for those charges. However, because appellant had waived his right to a preliminary hearing, the court denied the dismissal request.

3. The essence of defense counsel's argument was that the legislature's failure to assign a state of mind to the crime made the statute a strict liability statute, which is impermissible

in the criminal law. *See Commonwealth v. Heck,* 517 Pa. 192, 535 A.2d 575 (1987). The Commonwealth disagreed, asserting that the Crimes Code provides the requisite culpable state:

When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly, or recklessly *with respect thereto.* 18 Pa.C.S.A. § 302(c).

Based on § 302, the trial court rejected counsel's claim that § 3742 was unconstitutional. Appellant has not pursued this claim.

change occurred between counsel and the court:

The Court: Well, I believe that the mental state that applies to that is as provided by section 302 of the Crimes Code. And those preliminary provisions of the Crimes Code, as you know, also apply to the Motor Vehicle Code, Title 75, so this could read, any driver who intentionally, knowingly, or recklessly, etc. You have to read that into it.

Counsel: But I don't think you can do that. That's my argument.

The Court: Okay.

Counsel: The issue is preserved.

The Court: Your motion to dismiss this count on the grounds that 3742 is unconstitutional is denied. That brings us to the change of venue issue.

Counsel: Can I just ask for a clarification point with respect to what you just said? Are you saying that as you apply 302, that a person, as an element of the offense, has to know he hit a person and leave the scene?

The Court: No. I'm just saying that he had to act either intentionally, knowingly, or recklessly. And reckless is a far less [sic] level of scienter than knowing, so he at least has to have acted recklessly in regard to other elements of the offense, and that's all I'm going to say about it at this time.

Pretrial Omnibus Motion Hearing, 6/20/00, at 17–18.

¶ 7 As a result of the above exchange, as well as testimony given and argument made on other issues, appellant's omnibus motion was denied in all respects and a new trial date, September 11, 2000, was set. On that date, however, appellant did not appear for trial but for the entry of a guilty plea to some of the charges against him. In exchange for appellant's plea to accidents involving death, tampering with evidence and insurance fraud, as well as the summary charges, the district attorney agreed to drop the charge of homicide by vehicle. There was no agreement between the parties with regard to sentencing, which was deferred until October 27, 2000.

## B. Recusal request

¶ 8 On October 2, 2000, the Harrisburg Patriot News ran a story on the case with the following headline: "Guilty Plea Perplexes Kleinfelter." In the article, journalist Hope Yen of the Associated Press (AP) focused on the sentencing judge and the possible sentences he might impose. Included in the story were excerpts from an interview Yen conducted with Judge Kleinfelter. According to appellant, the relevant portion of the article is as follows:

Under the agreement with District Attorney Edward Marsico, Druce pleaded guilty to leaving the scene of a fatal accident, insurance fraud and tampering with evidence. A charge of vehicular homicide was dropped and the deal allows Kleinfelter to set the sentence.

But despite his guilty plea on the hit and run charge, Druce has continued to deny that he knew he hit a person that night or tried to cover it up by lying to his insurance company about the location of the accident.

"It is very clear that the law makes no reference to a person knowing whether or not they struck a person. It's just not there," Druce said in a Sept. 21 telephone interview. "I believed I struck a sign."

Kleinfelter called that claim strange. He said most defendants with that view would plead not guilty and stand trial. The judge also said Marsico [the district attorney] appeared to get the better end of the plea agreement because "he didn't really give up anything" except a more tenuous vehicular-homicide charge.

"The whole idea of a hit-and-run charge is it involves personal injury to a person," Kleinfelter said. "When Druce pleaded guilty to that charge, he admitted that he knew he hit somebody."

Appellant's Brief at 11 (quoting Harrisburg Patriot News, October 2, 2000).

¶ 9 A week after Ms. Yen's story was published in the Patriot News, and thereafter carried by other Pennsylvania newspapers, appellant filed a motion calling for Judge Kleinfelter's recusal from the case and requesting that another judge, from a county other than Dauphin County, be assigned to impose sentence. The motion was based on appellant's claim that the court's interview with the press violated the Code of Judicial Conduct and the statements made by the court created an appearance of bias and prejudice against appellant.

¶ 10 Judge Kleinfelter denied the motion and appellant responded by seeking emergency relief from our supreme court under its Kings Bench powers. The Pennsylvania Supreme Court denied appellant's emergency application without prejudice. However, two members of the court, Justices Castille and Newman, dissented and would have granted the recusal/disqualification request.[4] Then–Chief Justice Flaherty concurred in the result.

### C. Sentencing and Bail

¶ 11 On October 27, 2000, appellant appeared before Judge Kleinfelter for sentencing. His attorneys asked the court to impose a sentence of one to two years incarceration, which constituted the mandatory minimum sentence for conviction of § 3742. They further requested that appellant be sent to a county prison so that he would be eligible for work release. The Commonwealth asked for a greater period of incarceration, in a state facility, relying on the deception appellant engaged in after the accident, including his false claim to his insurance company.

¶ 12 The court, after hearing from the victim's family, appellant's family and appellant himself, imposed the following sentences and ordered that they be served consecutively:

§ 3742, Accidents Involving Death or Personal Injury—one to two years in a state correctional facility;

§ 4910, Tampering with or Fabricating Physical Evidence—six months to one year in a state correctional facility; and

§ 4117, Insurance Fraud—six months to one year in a state correctional facility.[5]

¶ 13 At the sentencing hearing, Judge Kleinfelter also revoked appellant's bail. Appellant promptly filed post sentence motions, in which he repeated his challenge to the court's refusal to recuse. He also included a challenge to the court's sentence. Judge Kleinfelter denied the post sentence motions.

¶ 14 Appellant also filed an emergency petition with this court, requesting that he be granted bail pending appeal. After this court denied his request for bail, appellant sought relief from the Pennsylvania Supreme Court via an emergency petition. That court granted appellant's request and remanded the matter to the trial court for imposition of bail pending appeal.[6]

---

4. Justice Castille, writing for the dissent, stated that he would not have granted appellant's request for assignment of a judge outside Dauphin County.

5. The court also imposed fines totaling $4,500.00 on these counts. In addition, the court imposed fines and costs on the four summary charges.

6. Justice Nigro dissented.

¶ 15 On remand, Judge Kleinfelter did not preside over the bail hearing; rather, the matter was assigned to the Honorable Todd A. Hoover. Judge Hoover ultimately set bail at $600,000.00, far in excess of appellant's request of $40,000.00 and higher than the Commonwealth's recommendation of $500,000.00. Judge Hoover also imposed conditions on appellant's release, including electronic home monitoring pursuant to Dauphin County's Adult Probation Department and an 8:00 PM to 6:00 AM curfew.[7] At oral argument before this court, the parties informed the panel that appellant remains on bail, under the terms and conditions set out in Judge Hoover's order.

## II. ISSUES ON APPEAL

### A. Recusal based on the AP article

¶ 6 Appellant's first issue on appeal concerns the recusal motion he made to the sentencing court. Appellant maintains that Judge Kleinfelter should have recused himself because his "public comments to a newspaper ... demonstrated [the] undeniable bias and prejudice [he] harbored ... against [appellant]." Appellant's Brief at 18.

 ¶ 17 A court's decision to deny a recusal motion is reviewed under an abuse of discretion standard. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291, 1300 (1985). The inquiry is not whether a judge was in fact biased against the party moving for recusal, but whether, even if actual bias or prejudice is lacking, the conduct or statement of the court raises "an appearance of impropriety." *In the Interest of*

*McFall*, 533 Pa. 24, 617 A.2d 707, 712 (1992). The rule is simply that "disqualification of a judge is mandated whenever a significant minority of the lay community could reasonably question the court's impartiality." *Commonwealth v. Bryant*, 328 Pa.Super. 1, 476 A.2d 422, 425 (1984) (quoting *Commonwealth v. Darush*, 501 Pa. 15, 24, 459 A.2d 727, 732 (1983)). *See also* Code of Judicial Conduct Canon 3(C) ("A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned"). Further, disqualification motions are not limited to judges who preside over trials, but extend to other proceedings, including sentencing. Our Supreme Court has explained:

> [T]he largely unfettered sentencing discretion afforded a judge is better exercised by one without hint of animosity toward appellant.... [A] defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned.

*Darush, supra* at 23, 459 A.2d at 732. *See also Bryant, supra,* (trial judge should have recused himself from post verdict motions and sentencing); *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 535 A.2d 91 (1987) (remand for resentencing before a different judge), *appeal denied*, 521 Pa. 609, 557 A.2d 341 (1989).

The parties rely on several cases that involve a judge's comments to the press and other third parties about a pending case. In addition, the Code of Judicial Conduct directly addresses this issue:

> A judge should abstain from public comment about a pending proceeding in any court, and should require similar absten-

---

**7.** Appellant was permitted to seek extensions of the curfew upon written requests to the Dauphin County Probation Department. In addition to the terms set out above, appellant was required to surrender his passport, report weekly to the probation department, refrain from drinking alcoholic beverages and be subject to random and unannounced visits by probation department personnel, which visits could include inspection of appellant's property to ensure compliance.

tion on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

Code of Judicial Conduct Canon 3A(6).

¶ 18 No party, including the court, has asserted that the interview Judge Kleinfelter granted to the AP could be construed as falling within one of the exceptions set out in Canon 3A(6). The interview was not given in the course of the judge's official duties nor was it an explanation of court procedures for public information. Thus it appears that Judge Kleinfelter's interview indeed was contrary to Canon 3A(6).[8] Appellant maintains that the court's "flagrant violation" of Canon 3A(6) demonstrates the bias and prejudice, or at least the appearance of bias and prejudice, necessary to warrant recusal. Appellant's Brief at 18. The Commonwealth insists that it does not.

¶ 19 We begin by noting that this case does not require us to decide whether a trial judge should recuse himself in the event he breaches the Code of Judicial Conduct directly or in spirit. Instead, we are limited by case law to deciding whether the judge's public statements establish bias or raise an appearance of bias. After careful consideration, we do not believe they do either of these things.

¶ 20 In *Darush*, the Pennsylvania Supreme Court addressed the question of whether a trial judge's public remarks established prejudice such that recusal was necessary. The trial judge in *Darush* had

been a local prosecutor at the time of appellant's previous trial, and, according to appellant, made derogatory comments about appellant at that time. The judge, however, could not recall making the remarks and so denied Darush's recusal motion. The *Darush* majority held that although it appeared that the court acted "with complete integrity," the judge's "inability to affirmatively admit or deny making [the] remarks" warranted recusal. However, the court did not grant the appellant a new trial because it found that "the integrity of the fact finding process [accomplished by a jury, not the judge] was [not] affected by any alleged predisposition held by the court." *Id* at 23–24, 459 A.2d at 732. Instead, the *Darush* majority remanded the matter only for resentencing by another judge, reasoning that the appellant was "entitled to sentencing by a judge whose impartiality [could not] reasonably be questioned."[9] *Id.* at 24, 459 A.2d at 732.

¶ 21 A year after *Darush*, a panel of this court decided *Commonwealth v. Bryant*, 328 Pa.Super. 1, 476 A.2d 422 (1984). In that case, the defendant requested that the trial court recuse itself from post verdict motions and sentencing because the judge, who was running for reelection, "allegedly announced in camera" that he would schedule appellant's sentencing in such a manner as to "generate pre-election publicity for himself" and, in addition, would impose the "maximum possible sentences." *Id.* at 424. Relying on *Darush* and other cases, the *Bryant* court found that because "the appellant adduced evidence of bias which was not refuted," recusal for post

---

8. The language of the Canon is not mandatory. It provides that a judge "should" refrain from public comment, not "shall" abstain.

9. Chief Justice Roberts dissented, reasoning that the appearance of unfairness that

prompted resentencing by another judge applied "with equal force to the trial stage of the proceedings." *Darush*, 501 Pa. at 25, 459 A.2d at 733 (Roberts, C.J., dissenting).

verdict and sentencing proceedings was the proper remedy. *Id.* at 425–26.

■ ¶ 22 It is clear from *Darush* and *Bryant* that recusal/disqualification is proper where there is evidence of bias or prejudice, as well as where there is evidence *tending to show an appearance* of bias or prejudice. Appellant insists that this is just such a case and that Judge Kleinfelter's interview with the AP reporter constitutes clear proof of his partiality.

■ ¶ 23 Appellant correctly observes that a judge's remarks to the press and other members of the public, *i.e.,* a breach of Canon 3A(6), can necessitate recusal. In *Commonwealth v. Berrigan,* 369 Pa.Super. 145, 535 A.2d 91 (1987), a panel of this court vacated the appellants' judgments of sentence and remanded for resentencing before a different judge due to the trial judge's public comments while the matter was pending before him. Although the recusal request in *Berrigan* included allegations of impropriety at both trial and sentencing, the *Berrigan* court was particularly troubled by the conduct of the trial judge "between the time of the guilty verdict and the sentencing hearing." *Id.* at 103. That conduct included a number of particularly outrageous statements by the trial judge.

¶ 24 The *Berrigan* trial judge made written replies to people who wrote to him in support of the *Berrigan* defendants and who requested a lenient sentence. The judge's responses characterized the defendants as "immature and intransigent people" whose "status and importance" he did not wish to enhance. *Id.* at 103–04. The court repeatedly denigrated the connection between the defendants' religious beliefs and the actions they took in violation of the law, stating that "clerical positions and religious orientation and perhaps fear of one's ultimate salvation obscured from the defendants, and those who blindly follow them, the obvious." *Id.* at 104. In various letters and on the record at the imposition of the sentence, the judge continually revealed his intense dislike for the defendants and anyone who supported them.

¶ 25 This court, in granting a new sentencing hearing before another judge, observed:

> When a judge implies that he is the target of a "witch hunt" secretly organized by a defendant by means of "thought control", we think that there is good reason for that judge to step aside before pronouncing sentence.

*Id.* at 104.

¶ 26 The egregious judicial conduct underlying *Berrigan* arguably made the recusal question an easy one. A more recent opinion of the Pennsylvania Supreme Court establishes that public commentary cases are not always so clear and, further, contravention of Canon 3A(6) does not require recusal in every instance.

¶ 27 In *Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996), a defendant convicted of first-degree murder and sentenced to death sought recusal of the trial judge in the second series of post-conviction proceedings held at the trial court level. According to Travaglia, the judge demonstrated bias and prejudice during the guilt and sentencing phases of his trial, as well as in statements the judge made to the press after his first post-conviction proceeding. The remarks of which the appellant complained apparently were published in several newspapers. They included comments by the judge about his dissatisfaction with how long the appeals process generally takes, and how long it was taking in Travaglia's case, as well as a statement by the court that "if anyone deserves to die, these two individuals do for killing

four people for fun." *Id.* at 144, 661 A.2d at 369 n. 37. Once the second post-conviction petition was filed, the court also commented to the press that he knew he could give the defendant a fair hearing on his second petition. *Id.*

¶ 28 The *Travaglia* court began its analysis of the appellant's recusal claim by noting that while the judge's comments likely violated Canon 3A(6), recusal was not mandatory:

> We do not approve of members of the judiciary speaking to the press about cases pending before them; yet, a jurist who has made such ill-advised comments does not necessarily abuse his or her discretion when he denies a motion for his or her disqualification.

*Id.* at 143–44, 661 A.2d at 369–70.

¶ 29 The *Travaglia* court gave great weight to the trial judge's assessment of the matter and his decision to deny the recusal motion. In finding that there was no abuse of discretion, the Supreme Court observed:

> Judge Mahalich [the trial judge], in a thoughtful opinion, detailed the examination of his conscience. He stated that "[t]o say that the Court is highly dissatisfied with the present system of perpetual appellate activity is not to say that the court would vent its frustrations by arbitrarily giving [Appellant's] current arguments less than the full and complete attention required by law." ... Judge Mahalich candidly noted that the crime which Appellant committed was heinous, but observed that courts were often required to preside over cases where the subject matter is disturbing; the requirements of due process, he stated, are unaffected by such circumstances. The judge concluded by stating that he did not believe public confidence would be affected by him presiding over PCRA [sic].

*Id.* at 144, 661 A.2d at 370 (citations omitted).

¶ 30 The rule we glean from *Travaglia* is that disregard for Canon 3A(6) does not *per se* trigger recusal. Instead, we must consider the substance of the judge's public comments and, as we did in *Berrigan,* determine whether those remarks undermined public confidence in the impartiality of the judiciary. This method of review is in keeping with the Pennsylvania Supreme Court's instructions regarding matters that may involve violations of the Code of Judicial Conduct. In *Reilly,* the Court cautioned:

> [V]iolations of ... [the Code of Judicial Conduct] are not a proper subject for consideration of the lower courts to impose punishment for ... judicial misconduct. The Constitution provides a mechanism for the enforcement of violations of the Code of Judicial Conduct and the Judicial Inquiry and Review Board is authorized, on its own volition, where necessary, to investigate violations of the Code....

*Reilly, supra,* at 220, 489 A.2d at 1299.

¶ 31 Our focus then is limited to *the effect* of the purported Code violation, not *the existence* of a purported violation itself. The latter issue ultimately is assessed by the state supreme court in proceedings fashioned to meet constitutional mandates. Judge Kleinfelter may or may not be subject to disciplinary proceedings in connection with his AP interview; however, it is clear that a purported violation of Canon 3A(6) alone does not necessitate recusal.

¶ 32 Central to appellant's complaint is the trial court's comment that when appellant pled guilty to accidents involving death "he admitted that he knew he hit somebody." Appellant's Brief at 11 (citing Harrisburg Patriot News, October 2, 2000). According to appellant, this

statement conclusively establishes Judge Kleinfelter's bias and/or prejudice. We do not agree.

¶ 33 What the court's statement does establish is its understanding of the statute and its elements, facts already made known to the parties at the omnibus motion hearing at which this very issue was discussed, but not resolved. It is clear from the hearing transcript that Judge Kleinfelter viewed the statute as punishing anyone who knew or should have known the serious and dangerous nature of the accident in which he was involved, thus requiring him to stop. Pretrial, appellant's counsel disagreed with the court's assessment of the law, arguing that the statute punished all drivers regardless of their mental state. Although it appears that counsel no longer disagrees with the court—he apparently has abandoned his claim that the statute is unconstitutional—he nonetheless asks us to find that the statement itself demonstrates bias.

¶ 34 In rejecting appellant's argument, we make the following preliminary observations. First, whether this single statement by the court is legally correct is not the issue on appeal. Our inquiry, as discussed above, must focus on whether the record establishes bias or prejudice or the appearance of bias or prejudice. The judge's frank discussion with a reporter regarding the statute's elements and the court's prior experience dealing with other persons charged with the offense do not alone determine the bias question.[10] Second, the single statement cannot be viewed in a vacuum. We must consider the entirety of the court's statements, not just the lone sentence upon which appellant focuses, in order to decide whether recusal was appropriate. Once considered in this light, we are confident that the interview Judge Kleinfelter granted fails to make out bias or prejudice against appellant. Further, the article, when read in its entirety, is not the type to prompt a public perception questioning the court's impartiality.[11]

¶ 35 In addition to the remarks emphasized by appellant, the article included several other comments made by the court. For instance, when asked if the judge viewed the sentence as a "deterrent ... to other state lawmakers that they are not above the law," Judge Kleinfelter was quoted as saying:

> What Druce did didn't really have to do with his office. When you're in a position of public trust and you somehow use that office to feather your nest for personal gain ... then that I think of course is a much more serious matter.

*Id.* at 12.

¶ 36 The article went on to report that some community leaders claimed that appellant was accorded special treatment due to his political status:

> Although some black leaders say Druce was given special treatment by authorities because he is a legislator, Kleinfelter said he won't be pressured to give a tougher sentence. The Harrisburg native says he is sensitive to community

---

10. Of course, whether or not the judge should have shared with a reporter his experience with charges such as these is a separate issue, one we cannot consider here.

11. Appellant makes much of the timing of the statements he made and those made by Judge Kleinfelter. According to appellant, he never publicly asserted that he thought he hit a sign on Cameron Street until after Judge Kleinfelter granted the AP interview. It is apparent from the AP article that Judge Kleinfelter was asked by the reporter how to square appellant's guilty plea with his insistence that he hit only a sign. Regardless of how the reporter came to ask the judge that question, it appears to have been the question posed.

concerns but does not believe Druce got favorable consideration.

Everything that a judge does generally displeases one side or another, he said. "If I had to worry about everyone who is unhappy because of the result ... then there would be a strong possibility that I would compromise my decisions. Fortunately, I don't have to do that either in this case or any other."

*Id.* at 13.

¶ 37 When read as a whole, the article presents a balanced picture of the judge, who, although perplexed by appellant's position, nonetheless intended to fashion a sentence fairly and without regard to outside influences, irrelevant issues and public opinion.

¶ 38 Like the court in *Travaglia*, we too are convinced that the comments made by the trial judge here, while apparently inappropriate under the Code of Judicial Conduct, did not require the court's disqualification. This case did not involve the emotionally charged, personal and bitter commentary made by the trial judge in *Berrigan*. Judge Kleinfelter's remarks were not the type of personally derogatory comments considered in *Darush*. There is no evidence that the court here was pursuing a personal agenda at appellant's expense as the evidence in *Bryant* tended to show. In light of all of the evidence and the applicable law, we find the record does not establish bias, ill will or prejudice, nor does it raise an appearance of partiality on the part of the court.

**B. Recusal based on the trial court's post-sentence opinion**

■■ · ¶ 39 Appellant attempts to bolster his recusal claim by drawing our attention to the trial court's post-sentence opinion. Appellant urges us to consider a number of statements Judge Kleinfelter makes in the opinion, arguing that they lend credence to his claim of bias and prejudice. Whether and to what extent these statements bear upon the issue of recusal is uncertain. In any event, we have considered them and remain unconvinced that they entitle appellant to relief.

¶ 40 Some of appellant's complaints are based on semantics; he criticizes the court's use of the term "confronted" when describing how two colleagues approached appellant and asked him if he was involved in the Cameron Street accident. Appellant insists that the colleagues "simply asked" if appellant was involved. We are not troubled by the court's choice of words.[12]

¶ 41 Appellant also takes issue with the court's statement that he "assumed responsibility for causing the death of Cains." According to appellant, his guilty plea to leaving the scene of an accident involving death does not mean that he *caused* the death of the victim in this case, particularly since the Commonwealth dropped the homicide by vehicle charge. In a similar vein, appellant challenges the court's use of the term "hit and run" in describing the accident on Cameron Street, once more relying on the *nolle pros* of the homicide by vehicle charge.

¶ 42 We find no merit in either challenge. At the guilty plea hearing, the following exchange took place:

[Commonwealth's Attorney]: Mr. Druce, I'll outline the charges against you, sir. The first charge is the charge of accident involving death or personal injury. Specifically, to read from the information, it is that you did intentionally,

---

**12.** Apparently, one of the colleagues told appellant that the accident occurred at 2:00 AM, to which appellant replied that he was home in Bucks County by that time. Appellant evidently told the other colleague that he was not involved in the Cameron Street accident.

knowingly, or recklessly, while driving a vehicle involved in an accident resulting in the death of another person, fail to immediately stop your vehicle at the scene of the accident or as close thereto as possible, and did forthwith fail to return or remain at the scene of the accident until you had fulfilled the requirements relating to the duty to give information and render aid; and *specifically, the death of Kenneth Cains was the result of this accident. Specifically, that your vehicle struck him and you then left the scene of that accident.* Do you understand the facts that give rise to that charge of accident involving death or personal injury?

The Defendant: yes.

[Commonwealth's Attorney]: How do you plead to that charge, sir?

The Defendant: Guilty.

Guilty Plea hearing, 9/11/00, at 11–12 (emphasis supplied).

¶ 43 In light of the manner in which the Commonwealth presented the charges to appellant on the record, we believe that the court's characterization of the plea as an "assumption of responsibility" for a "hit and run accident" is reasonable. Further, even if the court's precise words are technically incorrect, they do not constitute proof of bias or even the appearance of prejudice.

¶ 44 With regard to other items mentioned by the court in its recitation of the facts, appellant offers further explanation. For instance, appellant claims that although his return to Bucks County that night was unexpected by colleagues, he changed his plans in consultation with his wife prior to the accident. In response to the court's observation that he sought rapid repairs to his vehicle, appellant explains that he did so because his trade-in had been previously scheduled. Finally, to the court's statement that appellant's flight on the night of the accident "removed evidence of his possible intoxication," appellant points to statements by his friends and one other person (also not part of the certified record) that he was not intoxicated.[13]

¶ 45 It is not our task to determine whether appellant's version of events is true, nor was it the task of the trial court to make that determination. As it noted at the sentencing hearing, the trial court was well aware that there was not a factual record from trial in this case. Our inquiry is limited to deciding whether the court's inclusion of these statements in its opinion tend to establish bias or prejudice. Assuming that the statements made by the court in its post-sentence opinion are relevant to our determination, we conclude that the statements do no rise to the level necessary to warrant recusal, nor do they constitute the "blatant demonstration of bias and prejudice" appellant insists they do.

¶ 46 We leave to the proper forum the question of whether the trial court's remarks in the AP article were appropriate under the Code of Judicial Conduct and what, if any, ramifications should follow. We decide only whether those comments were sufficient under the law to prompt recusal in this case. We find, for the reasons set out above, that they were not.[14]

13. The question of alcohol was an issue in the case prior to trial. The record reflects that appellant filed a pretrial motion to exclude evidence of his alcohol consumption because he had not been charged with alcohol-related offenses. The motion was not resolved before the entry of appellant's guilty plea.

14. Because we find no abuse of discretion on the recusal issue, we need not consider appel-

## C. Abuse of Discretion in Sentencing

¶ 47 Appellant's remaining claims concern the discretionary aspects of the court's sentence. He argues that in fashioning the sentence, Judge Kleinfelter erroneously relied on matters he was not authorized to consider, *i.e.,* matters not of record, and failed to consider relevant factors that would militate in favor of a lighter sentence. We note first that appellant's challenge here concerns only his insurance fraud and tampering with evidence convictions. The trial court imposed the mandatory minimum sentence on the conviction for accidents involving death; there is no allegation of abuse of discretion with respect to that charge.

■ ¶ 48 The right to appeal the discretionary aspects of a sentence is not absolute, but rather is granted only where the appellant "demonstrate[s] that there is a substantial question that the sentence is inappropriate ... and [i]n fulfilling this requirement, ... include[s] in his or her brief a concise statement of the reasons relied on in support of the petition for allowance of appeal." *Commonwealth v. Kenner,* 784 A.2d 808, 810–11 (Pa.Super.2001). Appellant has satisfied those requirements here, thus permitting our review.[15]

■ ¶ 49 We address appellant's claims mindful of our standard of review in such instances, that is, "sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Id.* (citing *Common-*

lant's claim that resentencing should take place before an out of county judge.

**15.** To the extent appellant frames his sentencing issues in terms of the court relying on improper factors and focusing solely on the seriousness of the crime, he has indeed raised a substantial question triggering our review.

*wealth v. Hess,* 745 A.2d 29, 30–31 (Pa.Super.2000)).

### 1. Consideration of matters not of record

■ ¶ 50 Relying on *Commonwealth v. Karash,* 306 Pa.Super. 229, 452 A.2d 528 (1982), appellant asserts that Judge Kleinfelter imposed a sentence "not based on evidence that was presented to him but based on comments reportedly made by [appellant] to a newspaper, which was an extra judicial source and outside of the record before him." Appellant's Brief at 38.

¶ 51 In setting forth the standard a court must follow in imposing sentence, the *Karash* court explained:

A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right of due process if, in deciding upon the sentence, it considers unreliable information or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.

*Id.* at 528–29.

¶ 52 The trial judge in *Karash* revealed at sentencing that he was relying on crimes allegedly committed by the defendant:

I've also taken into consideration the crimes [escape] you have committed in Pennsylvania since the time that you returned here .... The Court feels, while I'm not sentencing you for those crimes, they have been part of the

*Commonwealth v. Rizzi,* 402 Pa.Super. 335, 586 A.2d 1380 (1991). However, as we note *infra,* appellant also insists that the imposition of consecutive sentences constitutes an abuse of discretion. That claim does not raise a substantial question.

Court's consideration in imposing this sentence . . . .

*Id.* at 529.

¶ 53 At a subsequent hearing on a motion to modify sentence, the *Karash* trial judge elaborated:

Okay. So the record reflects, I don't know whether it's in there or not, but the matter of Mr. Karash's [escape] incident was on all of the local television channels and in all the local newspapers. It was the only source of the Court's information, and actually showed pictures of Mr. Karash being apprehended in handcuffs at the scene, and the Court was aware that he was supposed to be in jail awaiting sentence and not to be out.

*Id.*

¶ 54 The record in this case is not like that in *Karash*. To begin, Judge Kleinfelter carefully outlined the sentences he imposed and recognized those instances that were in the aggravated range of the sentencing guidelines or represented a departure from the guidelines. He then articulated his reasons for those sentences:

The court had sentenced within the sentencing guidelines on the charge of accidents involving death or personal injury [imposition of the mandatory minimum]. The court has departed from the guidelines, has sentenced above the aggravating range of the guidelines on the charge of tampering with physical evidence, and we have done so for this reason; that is, that the evidence tampered with involved a homicide investigation. We consider that to be aggravating and worthy of sentencing outside the guidelines.

Similarly the guidelines on the insurance fraud count are RS [Restorative Sanctions or non-confinement] to three, standard range, aggravated range of six months. Here we have sentenced within

the guidelines, aggravating range, at six months. We move from the standard to the aggravating range once again because the insurance fraud was perpetrated, in the court's mind, not simply for monetary gain, but as part of an overall scheme to cover up a homicide investigation.

Sentencing Hearing, October 27, 2000, at 36–37.

¶ 55 While appellant characterizes the court's reasoning as emanating from its focus on improper factors, the record establishes otherwise. Judge Kleinfelter explained that his sentence was prompted not by bias, prejudice or the contents of a newspaper article, but by a reasoned assessment of the facts before him:

So if I am perplexed over the inconsistency of your claims, Mr. Druce, as against the facts, it's not because I feel any partiality towards you, it is because in my mind, which may lack the great sophistication of other legal minds, it doesn't make sense. The impact of your car with the body of Mr. Cains was not by all accounts a glancing blow. There was by all accounts a considerable impact. I understand that the impact of Cains'[s] body broke your windshield.

There are other reasons why I'm puzzled by your persistence in the traffic sign claim. One reason stems from your plea of guilty to the other two charges in this case. The first was tampering with evidence. When you pleaded guilty to that charge, you acknowledged that you believed that an investigation was pending or about to be instituted and that you took certain steps with regard to your Jeep Cherokee, to conceal or remove evidence.

Well, I have to ask myself, exactly what investigation did you think was pending? Striking a traffic sign? You think you hit a traffic sign and that's

why you disposed of evidence? I suppose the third factor that caused me to be perplexed was your guilty plea to the insurance fraud count. If the claim for insurance was related to hitting a traffic sign, what difference does it make, at least in my mind or to your insurance company, that the traffic sign was on the Turnpike or on Cameron Street? The only conclusion I glean from that is your knowledge that Cameron Street was also the scene of a traffic fatality.

\* \* \* \* \* \*

The initial crime may reflect a lack of good judgment but the compounding crimes which follow reflect a lack of character.

\* \* \* \* \* \*

So in a case such as this although the hit and run is graded the more serious crime, it is the cover up, which through the tampering with evidence and the insurance fraud, that most offends the public sensibilities.

*Id.* at 32–34.

¶ 56 We conclude that the court's inferences were not only made from the record before it, they were reasonable in light of that record. Appellant makes much of the fact that the homicide by vehicle charge was dropped by the district attorney, and so the court was not permitted to consider it. Appellant is correct that the court was precluded from sentencing appellant for that charge or attempting to do so via its sentence on the other charges. *See Karash, supra.* But appellant's negotiations with the prosecution to drop the homicide charge does not negate the fact that Mr. Cains was killed as a result of the impact with appellant's vehicle. Nor does it annul the fact that this was indeed a homicide investigation, as evidenced by the initial charges against appellant.

¶ 57 Appellant's guilty plea does not prevent the sentencing court from making reasonable inferences based on those facts. The record here reflects that in sentencing appellant, the court considered the charges to which appellant pled guilty and the elements of those crimes. It did not consider impermissible factors.

### 2. *Failure to consider proper factors*

¶ 58 Appellant also claims that in sentencing appellant, the trial court considered only the nature of the offenses, to the exclusion of all other factors. He relies on *Commonwealth v. Rizzi*, 402 Pa.Super. 335, 586 A.2d 1380 (1991) and *Commonwealth v. Rooney*, 296 Pa.Super. 288, 442 A.2d 773 (1982), both of which preclude a court from imposing a sentence based only on the seriousness of the crime. But as our discussion above indicates, the court here did not rely solely on the seriousness of the crimes at issue. Instead, the court looked beyond the mere elements of the crime and considered the specific facts of the case.

¶ 59 The judge noted that appellant's act of insurance fraud did not appear to be the typical type, *i.e.*, solely for monetary gain. The court made this reasonable inference based on an assessment of all the circumstances, including appellant's admission to tampering with physical evidence. That crime punishes the person who believes an "official proceeding or investigation is pending or about to be instituted" and, as a result, "alters, destroys, conceals, or removes" physical evidence relevant to the investigation. 18 Pa.C.S.A. § 4910(1). Again, appellant's plea of guilty cannot serve to shield him from the facts of the matter. Contrary to appellant's assertions, Judge Kleinfelter did not rely simply on the nature of the substantive offenses; he delved deeper into the specific facts underlying the convictions.

¶ 60 In *Rizzi*, one of the cases upon which appellant relies, this court observed that a trial court's sentence "may not be reversed lightly," but held that a court's reliance on the seriousness of an offense, without sufficient evidence in the record to support a severe sentence, warranted reversal. *Rizzi*, 586 A.2d at 1386. In cases considered after *Rizzi*, this court has stated that seriousness indeed may be considered, but so too must other issues set out in 42 Pa.C.S.A. § 9721(b).[16] *Commonwealth v. Trimble*, 419 Pa.Super. 108, 615 A.2d 48, 53 (1992). The *Trimble* court affirmed the imposition of sentence because the trial judge considered the defendant's prior criminal record, his lack of remorse, his abuse of authority, his age, education and ability to understand his acts and the impact on the victim. *Id.* at 53–53. In this case, Judge Kleinfelter certainly reached his decision with the same careful deliberation.

¶ 61 To begin, the judge heard from not only members of the victim's family, but also from appellant's wife and appellant himself.[17] After hearing that live testimony, and listening to the arguments of counsel, the court made the several observations, excerpted above and also commented on what it perceived as appellant's continued attempts to "flirt with truth," even at sentencing:

> [A] plea of guilty is not a dance with innocence. It is not a flirtation with the truth. And yet I have the sense that that is what is happening here. If we have learned any political lesson from the last century, from Watergate to Mo-

nicagate, it is that as bad as the underlying crime may be, it is the cover-up that is worse. Citizens seem willing to forgive—and we heard that today from the Cains family—willing to forgive the kind of transgressions which may be common to any man. They are less willing to forgive the deception and deceit which may follow to avoid responsibility. The initial crime may reflect a lack of good judgment but the compounding crimes which follow reflect a lack of character. I'm not sure but the cover-up persists to this moment.

Sentencing Hearing, 10/27/2000, at 33.

¶ 62 Clearly, the court was questioning the admissions appellant purported to make by pleading guilty and in doing so taking into consideration appellant's rehabilitative needs. The sentencing court is in the best position to judge the "defendant's character, [and his] displays of remorse, defiance or indifference." *Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337, 354, *appeal denied*, 533 Pa. 598, 617 A.2d 1272 (1992). We find support in the record for the court's conclusions, further entitling his views to the great weight they are to be accorded. *Id.* Finally, the court commented on the effect appellant's crimes had on the victims, relying on the testimony given by all of the witnesses. *See* Sentencing Hearing Transcript, 10/27/2000, at 34–35.

¶ 63 Our review of the sentencing hearing, as well as the documents filed by the parties, leads us to conclude that the trial court satisfied the mandates of § 9721.

---

**16.** That statute provides, in relevant part:
[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and on the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

**17.** Judge Kleinfelter also noted on the record that appellant waived his right to a Pre–Sentence Investigation; however, the court had the benefit of sentencing memoranda filed by both parties in advance of the hearing.

The court heard all the evidence proffered by appellant and, after considering the evidence of record, articulated on the record in accordance with the law the reasons for the sentence it imposed.

### 3. Consecutive sentences

¶ 64 Appellant's final attack is on the trial court's imposition of consecutive sentences. He concedes however that the "question of whether sentences are properly run consecutively or concurrently is within the sound discretion of the trial judge and has not normally been considered a substantial question for review on appeal. *Commonwealth v. Wellor*, 731 A.2d 152 (Pa.Super.1999)." Appellant's Brief at 44. Nonetheless, appellant argues that the "totality of the circumstances . . . make [sic] it appropriate for this court to consider" the issue. *Id.* Even if we could ignore *Wellor*, we would deny relief based on our assessment of the issues set out above. Appellant faced a mandatory minimum sentence of one to two years in prison for just one of the three crimes to which he pled guilty. In light of the record, his ultimate sentence to an aggregate term of two to four years incarceration was not an abuse of discretion.

### III. CONCLUSION

¶ 65 Upon careful review we find that appellant is not entitled to relief. Based on the applicable case law and considering the facts of this case, we conclude that recusal was not required. We also conclude that the trial court did not abuse its discretion in imposing sentence.

¶ 66 Judgment of sentence affirmed.