J-A22014-25
J-A22015-25

2026 PA Super 5

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
  :
  :
v.  :
  :
  :
  :
BRYAN ROBERT FREEMAN  :
  :
Appellant  :  No. 1007 EDA 2024

Appeal from the Judgment of Sentence Entered February 29, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001077-1995


COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
  :
  :
v.  :
  :
  :
  :
DAVID JONATHAN FREEMAN  :
  :
Appellant  :  No. 1308 EDA 2024

Appeal from the Judgment of Sentence Entered February 27, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001078-1995

BEFORE:  LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, P.J.:      **FILED JANUARY 9, 2026**

      Bryan Robert Freeman (Bryan) and David Jonathan Freeman (David)

(collectively, the Freeman Brothers or Brothers) appeal from the judgments

_____

[*] Former Justice specially assigned to the Superior Court.

of sentence,[1] entered in the Court of Common Pleas of Lehigh County, following their respective guilty pleas to one count each of first-degree murder.[2] After careful review, we vacate the judgments of sentence and remand for further proceedings consistent with this decision.

On the evening of February 26, 1995, Bryan, David, and their adult cousin, Nelson Birdwell, III (Birdwell), were inside the Freeman family home. The Brothers' mother, Brenda Freeman (Brenda), their father, Dennis Freeman (Dennis), and their eleven-year-old brother, Erik Freeman (Erik), were also home. At some point during the evening, Brenda, Birdwell, and the Brothers got into an argument about Birdwell needing to go home. As a result of this argument, Bryan fatally stabbed Brenda in the back and shoulder while Birdwell bludgeoned her head with a pickaxe handle.

After killing Brenda, Birdwell and the Brothers proceeded upstairs, where David retrieved an aluminum baseball bat from a closet. David and Birdwell stood on either side of the bed where Dennis was sleeping. David used the baseball bat to bludgeon Dennis' face and chest repeatedly, causing

_____

[1] Bryan timely appealed from his judgment of sentence at docket number CP-39-CR-0001077-1995 (No. 1077-1995), entered on February 29, 2024, and David timely appealed from his judgment of sentence, at docket number CP-39-CR-0001078-1995 (No. 1078-1995), entered on February 27, 2024. We consolidate these cases *sua sponte* because the underlying facts are the same, the Brothers raise virtually identical claims on appeal, and we grant the same relief. **See** Pa.R.A.P. 513 ("[W]here the same question is involved in two or more appeals in different cases, [this Court] may . . . order them to be argued together in all particulars as if but a single appeal.").

[2] 18 Pa.C.S.A. § 2501(a).

his death.  David then used a knife to stab Dennis in the chest.  At some point, Birdwell also struck Dennis and Dennis' throat was cut.  During the above-described events, Erik was also murdered.  However, neither the Brothers nor Birdwell were ever convicted for Erik's death.[3]  At the time of this incident, Bryan was seventeen years old and David was sixteen years old.

On December 7, 1995, and December 15, 1995, Bryan and David each pled guilty to one count of first-degree murder.  Immediately after accepting their guilty pleas, the trial court imposed the then-mandatory sentences of life imprisonment without parole.  The Brothers did not file post-sentence motions or notices of appeal.

On July 6, 2010, Bryan filed a Post Conviction Relief Act (PCRA) petition, his first.  **See** 42 Pa.C.S.A. §§ 9541-9546.  After procedural history not relevant to this appeal, Bryan's PCRA petition was dismissed as untimely and this Court affirmed.  **See Commonwealth v. Freeman**, 134 A.3d 103 (Pa. Super. 2015) (Table).  Bryan filed a petition for allowance of appeal in our Supreme Court, which was granted, and our Supreme Court vacated and reversed this Court based on the decisions of the United States Supreme Court in **Miller v. Alabama**, 567 U.S. 460 (2012), and **Montgomery v. Louisiana**, 577 U.S. 190 (2016).  **See Commonwealth v. Freeman**, 143 A.3d 888 (Pa. 2016).

---

[3] Birdwell, an adult, was tried separately from the Brothers.

Similarly, on July 7, 2010, David filed a PCRA petition, his first. The PCRA court dismissed his PCRA as untimely and this Court affirmed. *See Commonwealth v. Freeman*, 120 A.3d 392 (Pa. Super. 2015) (Table). David filed a petition for allowance of appeal in our Supreme Court, which was granted, and our Supreme Court vacated and reversed this Court based on *Miller* and *Montgomery*. *See Commonwealth v. Freeman*, 131 A.3d 485 (Pa. 2016).

In light of *Miller* and *Montgomery*, our Supreme Court concluded that *Miller* had announced a substantive rule that is retroactive for cases on collateral review. *See Freeman*, 143 A.3d 888; *Freeman*, 131 A.3d 485. Upon remand, this Court reversed and vacated the PCRA court's dismissals of the Brothers' PCRA petitions and remanded for further proceedings consistent with *Montgomery* and *Miller*. *See Commonwealth v. Freeman*, 144 A.3d 197 (Pa. Super. 2016) (Table) (remanding Bryan's case for new sentencing hearing); *see also Commonwealth v. Freeman*, 145 A.3d 784 (Pa. Super. 2016) (Table) (remanding David's case for new sentencing hearing).[4]

On remand, the PCRA court scheduled the Brothers' resentencing for September 22, 2016. There were significant delays,[5] but the only delay

_____

[4] We note, as it is relevant to the claims raised on appeal, that during appellate litigation, the trial docket was reassigned to the Honorable Maria L. Dantos.

[5] These delays include, but are not limited to, COVID-19-related delays, defense requests for funding for the Brothers to meet with experts for psychological evaluations, the Commonwealth filing notices of intent to seek
*(Footnote Continued Next Page)*

- 4 -

relevant to the claims raised herein is that, during the pendency of the Brothers' resentencing, Judge Dantos retired, *see supra* at n.4, and the case was reassigned to the Honorable Douglas G. Reichley (hereinafter Judge Reichley or the trial court).

After the case was reassigned to Judge Reichley, the Brothers filed a joint motion for recusal on February 12, 2024. *See* Joint Motion for Recusal, 2/7/24, at 1-7. The Brothers argued that Judge Reichley had previously served as the Lehigh County prosecutor in the case of a copycat killer, Jeffrey Howorth.[6] *See id.* The Brothers asserted that the Commonwealth's theory in Howorth's case was that Howorth was "inspired" by the Brothers' murders of their family, and that was why Howorth murdered his own family weeks later. *See id.* The Brothers contended that Judge Reichley's prosecution of Howorth, and subsequent news articles regarding comments Judge Reichley made during his prosecution of Howorth,[7] raised substantial doubts regarding

_____

sentences of life imprisonment, and the Commonwealth seeking stays of proceedings while our Supreme Court decided *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017).

[6] On March 3, 1995, Howorth shot and killed both of his parents with a hunting rifle. It is uncontested that, during their investigation, the police uncovered writings authored by Howorth in which he claimed he had been "inspired" or "liberated" by the Brothers' murder of their family. *See* Trial Court Opinion, 10/15/24, at 8 (summarizing Howorth case). Ultimately, Howorth was found not guilty by reason of insanity.

[7] These media comments include then-assistant district attorney (ADA) Reichley's comments that the Freeman Brothers' murders were "central" to the Commonwealth's theory of the case against Howorth. *See* Joint Motion
*(Footnote Continued Next Page)*

Judge Reichley's ability to preside impartially over the Brothers' resentencing. **See id.** at 4-7.

On February 12, 2024, the Brothers filed an amended motion for recusal, based upon information that Judge Reichley was also the prosecutor who represented the Commonwealth in the appeal of Birdwell, the Brothers' co-defendant. **See** Amended Motion for Recusal, 2/12/24, at 1-3. On the same day, the trial court proceeded to a resentencing hearing, at which it first addressed the joint motion for recusal. After argument, the trial court denied the motion and proceeded to conduct the resentencing hearing. **See** Order, 2/12/24, at 1.

From February 12, 2024, through February 21, 2024, the trial court conducted a multi-day resentencing hearing, after which the court imposed sentences of 60-years-to-life imprisonment for both Bryan and David. On February 27, 2024, the trial court issued amended judgments of sentence to reflect that the original 1995 sentences were vacated. Both Bryan and David filed timely post-sentence motions, which the trial court denied.

_____

to Recuse, 2/12/24, at 1-7 (summarizing news articles); **see also id.** at Exhibits 1-7 (news articles from, *inter alia*, the Philadelphia Inquirer summarizing then-ADA Reichley's comments about the Freeman Brothers' trial, its importance in his prosecution of Howorth, and his disagreement with the jury's finding of insanity). Those comments further demonstrate that then-ADA Reichley's theory against Howorth was that the Freeman Brothers' actions "liberated" Howorth and "inspired" him to kill his own family. **See id.**

Bryan and David filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. Bryan raises the following claims for our review:

[1.] Did not the [trial] court err, abuse its discretion[,] and violate due process, in denying [the Brothers'] joint motion for recusal, due to the [trial] court's earlier role as prosecutor in [Birdwell]'s appeal in the same case, with the identical facts, where [Birdwell] was alleged to have acted in concert with [the Brothers]; and the [trial] court's role as trial prosecutor in another earlier murder case in which his theory of prosecution was that [the Brothers'] crimes in this case inspired and enabled the murders in the case he prosecuted?

[2.] Did not the [trial] court err and abuse its discretion in:

(i) Imposing a manifestly excessive sentence due to its consideration of only the gravity of the offense, to the exclusion of the other critically important factors of 42 Pa.C.S.[A.] § 9721(b).

(ii) Imposing a manifestly excessive sentence based in part on the impermissible sentencing recommendations of two police officials involved in the prosecution?

[3.] Is not the [60]-years-to-life sentence imposed manifestly excessive and a de facto life sentence under Article I, Section 13, of the Pennsylvania Constitution, requiring proof, not found here, that the juvenile was permanently incorrigible, irreparably corrupt, or irretrievably depraved?

Bryan's Brief, at 5-6.

David raises the following claims for our review:

[1.] Are the Eighth and Fourteen[th] Amendments violated where the Court of Common Pleas Judge presiding over a juvenile-lifer resentencing hearing declines to recuse himself when he has previously participated as [a] prosecutor in related matters, and expressed opinions concerning [David]'s guilt and influence upon

- 7 -

other crimes, creating an actual bias, or at a minimum, an appearance of bias?

[2.] When a juvenile defendant has demonstrated a capacity for change and rehabilitation, does it violate the Eighth Amendment of the United States Constitution's prohibition on cruel and unusual punishment to sentence the juvenile to a de facto life sentence?

[3.] Where a sentencing court finds that a juvenile defendant has demonstrated a capacity for change and rehabilitation, does it violate Article 1, Section 13 of the Pennsylvania State Constitution's prohibition on cruel punishments to sentence the juvenile to a de facto life sentence?

[4.] Did the sentencing court abuse its discretion in imposing a sentence of 60 years to life, rendering [David] ineligible for parole until he is 76 years old, where the sentencing court deviated from sentencing guidelines and focused only [on David]'s crime to the detriment of fully considering his youth, history, and rehabilitative needs?

David's Brief, at 5-6.

It is well-settled that "[w]here a jurist rules that he . . . can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion." ***Commonwealth v. Watson***, 228 A.3d 928, 939 (Pa. Super. 2020).

> In reviewing the denial of a recusal motion to determine whether the judge abused his discretion, we recognize that our judges are honorable, fair[,] and competent. Based upon this premise, where a judge has refused to recuse himself, on appeal, we place the burden on the party requesting recusal to establish that the judge abused his discretion.
>
> * * *
>
> The term "discretion" imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of

- 8 -

giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice[,] or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will.

***Commonwealth v. King***, 839 A.2d 237, 239-40 (Pa. 2003) (internal citations and quotation marks omitted). "In general, a motion to recuse is properly directed to and decided by the jurist whose participation the moving party is challenging." ***Watson***, 228 A.3d at 939.

In applying the above standard, we note that:

The inquiry is not whether a judge was in fact biased against the party moving for recusal, **but whether**, even if actual bias or prejudice is lacking, **the conduct or statement of the court raises an appearance of impropriety**. The rule is simply that disqualification of a judge is mandated whenever a significant minority of the lay community could reasonably question the court's impartiality.

***Commonwealth v. Druce***, 796 A.2d 321, 327 (Pa. Super. 2007) (internal quotations and citations omitted; emphasis added). "There is no need to find actual prejudice, but rather, **the appearance of prejudice is sufficient to warrant the grant of new proceedings**." ***Commonwealth v. Rhodes***, 990 A.2d 732, 748 (Pa. Super. 2009) (emphasis added).

Furthermore, motions for recusal are not limited to judges who preside over trials, but extend to other proceedings, including sentencing. ***See Druce***, 796 A.2d at 327 ("[A] defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned."); ***see also Rhodes***, 990 A.2d at 748 ("The sentencing decision is of paramount importance in our

criminal justice system, and must be adjudicated by a fair and unbiased judge . . . who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome.").

In the context of a now-sitting judge having prior employment in the district attorney's office, the United States Supreme Court has held that in order to determine whether a judge harbors an unconstitutional level of bias, the inquiry is an objective one wherein the requisite question is whether "the average judge . . . is likely to be neutral, or whether there is an unconstitutional potential for bias." ***Williams v. Pennsylvania***, 579 U.S. 1, 8 (2016) (internal quotations omitted). Further, there is an impermissible risk of actual bias when a judge has had "significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." ***Id.***

By way of background, the defendant in ***Williams*** was convicted of the 1984 murder of Amos Norwood and sentenced to death. During the trial, the then-district attorney of Philadelphia, Ronald Castille, approved the trial prosecutor's request to seek the death penalty against Williams. ***See id.*** at 1. In 2012, Williams filed a successful PCRA petition and the PCRA court stayed his execution and ordered a new sentencing hearing. ***See id.*** The Commonwealth appealed to the Pennsylvania Supreme Court, whose then-chief justice was former District Attorney Castille, to vacate the PCRA court's stay of execution. ***See id.*** Williams filed a response, in which he requested that Chief Justice Castille recuse himself, which was denied. ***See id.***

Ultimately, the Pennsylvania Supreme Court vacated the PCRA court's order and reinstated Williams' death sentence. ***See id.***

Williams sought certiorari in the Supreme Court of the United States, which was granted. ***See id.*** Based upon its review, the United States Supreme Court held that Chief Justice Castille's prior authorization to seek the death penalty in Williams' case amounted to a "significant personal involvement in a critical trial decision" and that his failure to recuse presented an unconstitutional risk of bias. ***Id.*** at 2. In reaching these conclusions, the United States Supreme Court explained:

> No attorney is more integral to the accusatory process than a prosecutor who participates in a major adversary decision. When a judge has served as an advocate for the State in the very case the court is now asked to adjudicate, a serious question arises as to whether the judge, **even with the most diligent effort**, could set aside any personal interest in the outcome. There is, furthermore, a risk that the judge "would be so psychologically wedded" to his or her previous position as a prosecutor that the judge "would consciously or unconsciously avoid the appearance of having erred or changed position." ***Withrow*** [***v. Larkin***], 421 U.S. [35,] 57 [(1975)]. In addition, the judge's "own personal knowledge and impression" of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court. [***In re***] ***Murchison***, [349 U.S. 133,] 138 [(1955)].
>
> * * *
>
> The involvement of other actors and the passage of time are consequences of a complex criminal justice system, in which a single case may be litigated through multiple proceedings taking place over a period of years. This context only heightens the need for objective rules preventing the operation of bias that otherwise might be obscured. Within a large, impersonal system, an individual prosecutor might still have an influence that, while not so visible as the one-man grand jury in ***Murchison***, is

nevertheless significant. A prosecutor may bear responsibility for any number of critical decisions, including what charges to bring, whether to extend a plea bargain, and which witnesses to call. Even if decades intervene before the former prosecutor revisits the matter as a jurist, the case may implicate the effects and continuing force of his or her original decision. In these circumstances there remains a serious risk that a judge would be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process. The involvement of multiple actors and the passage of time do not relieve the former prosecutor of the duty to withdraw in order to ensure the neutrality of the judicial process in determining the consequences that his or her own earlier, critical decision may have set in motion.

*Williams*, 579 U.S. at 9-11 (emphasis added).

The United States Supreme Court further considered the fact that Chief Justice Castille did not personally prosecute Williams, but nevertheless emphasized that his "significant, personal involvement in a critical decision in Williams'[] case gave rise to an unacceptable risk of actual bias." *Id.* at 14.

Instantly, as noted above, Judge Reichley previously represented the Commonwealth of Pennsylvania as an ADA against the Brothers' co-defendant, Birdwell, on appeal, and prosecuted the copycat killer, Howorth, at trial.

In light of the foregoing, we conclude that an appearance of bias or impartiality exists under these circumstances. Indeed, Judge Reichley's role as an advocate against Birdwell was so related and intertwined with the Brothers' case as to create an impermissible risk of actual bias. *See Williams*, *supra*; *see also Withrow*, *supra*; *Murchison*, *supra*. In our view, Judge Reichley's prior representation of the Commonwealth against

- 12 -

Birdwell, as the Brothers' co-defendant in the same case, at **any stage** of the proceedings, requires that he recuse from the Brothers' cases. *See Williams*, *supra*. Accordingly, Judge Reichley abused his discretion by refusing to recuse.[8]

In reaching our conclusion, we emphasize that our standard of review is not whether Judge Reichley is subjectively capable of being impartial. *See Druce*, *supra*. Rather, our standard of review is **an objective one** of whether a reasonable person would conclude that an appearance of bias exists. *See id.*; *see also Williams*, *supra*. The holding in *Williams* makes it clear in this case that if a jurist has previously represented the Commonwealth in a case against a defendant, or even that of a co-defendant in the same case, he or she must recuse, as such prior representation creates an **objective** appearance of bias, which is impermissible. *See Williams*, *supra*. Accordingly, we vacate the Brothers' judgments of sentence, vacate Judge Reichley's order denying the joint motion for recusal, and remand for

---

[8] While we do not hold that it is independently sufficient nor essential here, we note that Judge Reichley's role as the prosecutor of Howorth, who expressed how he was "inspired" by the Brothers to murder his own parents within a week of the Brothers' crimes, also weighs in favor of our holding here. We note that then-ADA Reichley's media comments and prosecution of Howorth certainly strengthen the need for recusal in the instant cases where the Commonwealth's theory against Howorth was that his killings were inspired by the Freeman Brothers' brutal murders of their family, and that the Brothers' murders were "central" to the prosecution of Howorth. *See supra*, at n.7. Indeed, such comments could tend to demonstrate that then-ADA Reichley was intimately familiar with the facts of Freeman Brothers' cases.

- 13 -

the appointment of another jurist who will preside over the Brothers' new resentencing proceeding.[9]

Judgments of sentence vacated. Cases remanded. Jurisdiction relinquished.

Sullivan, J., joins this Opinion.

Stevens, PJE files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/9/2026

_____

[9] In light of our disposition, we need not address the Brothers' remaining claims.

- 14 -