J-S60008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT CHARLES DAVIS | : | |
| | : | |
| Appellant | : | No. 471 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 19, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000053-2010

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 07, 2020**

Appellant, Scott Charles Davis, appeals from the judgment of sentence

entered following the revocation of his probation on February 19, 2019, in the

Lancaster County Court of Common Pleas. After review, we affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court set forth the relevant

facts and procedural history in this case as follows:

> The victim, at the time of the offense, was a child of
> 10 years who, at the time she met the 55-year old
> [Appellant], was [a] server at her family's restaurant.
> The evidence made it clear [Appellant] became
> obsessed with her, visiting the restaurant frequently
> and paying close attention to her even though he
> resided outside Lancaster County, in Montgomery
> County. He wrote her numerous letters and text
> messages and tried to drive a wedge between her and
> her family with a complaint to the US Department of
> Labor, saying that the parents were subjecting her to

_____

[*] Retired Senior Judge assigned to the Superior Court.

abusive work conditions. Efforts to have [Appellant] stop his attention and communications were to no avail.

Trial Court Opinion, 08/29/11, p. 2. In a seventeen (17) page letter to the victim dated July 7, 2009, [Appellant] acknowledged previously asking the victim to marry him some day. N.T. Trial, 01/05/11, p. 116; Com. Ex. 3, p. 174. Following a bench trial on January 5, 2011, [Appellant] was found guilty of stalking[1] and harassment[2]. On June 2, 2011, [Appellant] was sentenced to a split-sentence of thirty (30) days to twenty-three (23) months of incarceration and a consecutive three (3) years of probation for stalking and a concurrent one (1) year of probation for harassment.[3] [Appellant] was additionally directed to have no contact with the victim or her family, to not go within one hundred (100) yards of the victim's family restaurant and to undergo psychological evaluation.[4] By Order dated July 5, 2011, [Appellant's] sentence was modified to remove the condition requiring a psychological evaluation, but directing [Appellant] to undergo a sex offender evaluation. [Appellant's] judgment of sentence was affirmed by the Superior Court of Pennsylvania on February 28, 2012. [**Commonwealth v. Davis**, 46 A.3d 830, 1290 MDA 2011 (Pa. Super., filed February 28, 2012) (unpublished memorandum).] [Appellant's] petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on August 29, 2012. [**Commonwealth v. Davis**, 50 A.3d 691, 243 MAL 2012 (Pa., filed August 29, 2012).]

---

[1] 18 Pa.C.S.A. § 2709.1(a)(2).
[2] 18 Pa.C.S.A. § 2709 (a)(7).
[3] Sentencing Order, 06/02/11, p. 1.
[4] Sentencing Order, 06/02/11, p. 2.

[Appellant] was granted parole on June 26, 2011, but a capias and bench warrant were issued on September 22, 2011 for [Appellant's] alleged failure to report to scheduled appointments on September 6, 2011 and September 19, 2011.[5] [Appellant] was found to have violated his parole and probation and on November 9, 2011[, Appellant] was sentenced to the balance of his maximum sentence of incarceration and a consecutive three (3) years of probation for stalking and to a new one (1) year probation period for harassment.[6] Once again [Appellant] was directed to have no contact with the victim or her family and to undergo a

sex offender evaluation and follow any recommendations within thirty (30) days.[7]

    [5] See, Pet. To Issue Capias and Bench Warrant, 09/22/11.
    [6] Sentencing Order, 11/09/11, p. 1.
    [7] Sentencing Order, 11/09/11, p. 2.

[Appellant] was granted immediate parole on November 9, 2011, but a capias and bench warrant were issued on July 13, 2012[,] for [Appellant's] alleged failure to comply with the recommendations of his sex offender evaluation.[8] [Appellant] was arrested on July 14, 2015. On September 1, 2015, [Appellant] was found to have violated his parole and probation and was sentenced to the balance of his maximum sentence of incarceration and a consecutive three (3) years of probation for stalking and to a new one (1) year probation period for harassment.[9] [Appellant] was directed to comply with sex offender conditions of probation and parole and to complete the recommended counseling.[10]

    [8] See, Pet. To Issue Capias and Bench Warrant, 07/13/12.
    [9] Violation Sentence Sheet, 09/01/15, p. 1.
    [10] Violation Sentence Sheet, 09/01/15, p. 2.

[Appellant] was granted parole on December 9, 2015, but a capias and bench warrant were issued on January 7, 2016 for [Appellant's] alleged failure to report for scheduled appointments on December 17, 2015, December 22, 2015, December 31, 2015 and January 5, 2016.[11] On May 23, 2017, an Order was entered amending the capias to include an allegation that [Appellant] was in further violation of his parole and probation for contacting the victim several time[s] through Facebook. [Appellant] was arrested on October 26, 2018. On December 12, 2018, [Appellant] was found [in violation of] his parole and probation for completely absconding from supervision upon his prior release from incarceration and for sending the victim approximately fifty (50) pages of messages through Facebook from March 24, 2017 to May 6, 2017.[12] [Appellant] stipulated to the violations and claimed, through counsel, to have voluntarily ceased attempts to contact the victim following May 6, 2017.[13] Sentencing was deferred pending the preparation of a presentence investigation report ("PSI") by the Adult Probation and Parole office.[14] Pending the

preparation of the PSI by Adult Probation and Parole, the [c]ourt, by email dated December 12, 2018, requested that a probation officer within that office inquire as to whether [Appellant] voluntarily ceased the contact with the victim as claimed. *See*, Ex. 1 attached hereto. Adult Probation and Parole responded with an email, also dated December 12, 2018, that the communications ceased when changes were made to the victim's Facebook account that limited communication from others. *Id.* For unknown reasons, this information was not included in the final PSI.

[11] See, Pet. To Issue Capias and Bench Warrant, 01/07/16.
[12] N.T. Parole/Probation Violation, 12/12/18, pp. 2-4, 8-9.
[13] N.T. Parole/Probation Violation, 12/12/18, pp. 2, 4-6.
[14] N.T. Parole/Probation Violation, 12/12/18, p. 8.

Following completion of the PSI, [Appellant's] parole was terminated and he was sentenced on February 19, 2019 to one and one-half (1½) years to three (3) years of incarceration for the probation violation relating to [Appellant's] stalking conviction.[15] Despite [Appellant's] probation for his harassment conviction having still been in effect at the time of the violations, there was inadvertently no sentence given as to that count.[16] [Appellant] filed a post-sentence motion on February 27, 2019, which was denied by Order dated March 18, 2019. [Appellant] filed his notice of appeal on March 21, 2019.

[15] N.T. Sentencing Hearing, 02/19/19, pp. 7-9.
[16] See, Pet. To Issue Capias and Bench Warrant, 01/07/16; N.T. Sentencing Hearing, 02/19/19, pp. 2, 9.

Trial Court Opinion, 5/20/19, at 1-6. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for this Court's consideration:

I. Was the sentence of 1½ to 3 years of incarceration in a state correctional facility manifestly excessive as to constitute an abuse

- 4 -

of discretion because the sentencing judge relied on an impermissible factor in fashioning [Appellant's] sentence?

Appellant's Brief at 4. Specifically, Appellant argues that the trial court improperly considered an *ex parte* communication when it imposed sentence; the communication was the aforementioned email concerning changes to the victim's Facebook settings. Appellant's Brief at 16-17; Pa.R.A.P. 1925(b) Statement, 4/11/19, at 1.[1]

Appellant's claim that the trial court considered improper factors in fashioning Appellant's sentence is a challenge to the discretionary aspects of the sentence. ***Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010). We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in ***Commonwealth v. Moury***, 992 A.2d 162 (Pa. Super. 2010):

---

[1] In the argument portion of his brief, Appellant challenges only the trial court's reliance on improper factors. Appellant, therefore, abandoned and waived any challenge to the duration of the sentence imposed. ***See Commonwealth v. Heggins***, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912-913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met: Appellant brought a timely appeal, raised the challenge in a post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raised a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

- 6 -

As noted above, Appellant avers that the trial court relied on an improper factor, an *ex parte* communication, in fashioning his sentence. Appellant's Brief at 12-13. We conclude that Appellant's claim presents a substantial question permitting appellate review. ***Downing***, 990 A.2d at 792 (citing ***Commonwealth v. Druce***, 796 A.2d 321, 334 (Pa. Super. 2002)) (stating that a claim that the trial court relied on matters outside of the record raised a substantial question).

Our standard of review is well settled and is set forth below:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. Simmons***, 56 A.3d 1280, 1283-84 (Pa. Super. 2012).

***Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa. Super. 2014). When evaluating the outcome of a revocation proceeding, this Court is limited to reviewing the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1033-1035 (Pa. Super. 2013). "[T]he revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. MacGregor***, 912 A.2d 315, 317 (Pa. Super. 2006).

Additionally, when sentencing a defendant following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000); 42 Pa.C.S. § 9771(b). Once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist: "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or, (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. § 9771(c)(1-3); *Fish*, 752 A.2d at 923.

Furthermore, because sentencing guidelines do not apply to sentences imposed following a revocation of probation, we are guided by the provisions of 42 Pa.C.S. § 9721, which state the general standards that a court is to apply in sentencing a defendant. *Commonwealth v. Ferguson*, 893 A.2d 735, 739 (Pa. Super. 2006).

> When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant, and it must impose an individualized sentence. The sentence should be based on the minimum confinement consistent with the gravity of the offense, the need for public protection, and the defendant's needs for rehabilitation.

*Id.* Moreover, this Court has explained that when the "sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court 'was aware of relevant information regarding defendant's

- 8 -

character and weighed those considerations along with mitigating statutory factors.'" *Moury*, 992 A.2d at 171.

In this appeal, Appellant alleges that the trial court improperly considered *ex parte* emails, which were exchanged on December 12, 2018,[2] between the trial court judge, the Honorable Howard F. Knisley, and Probation Officer Merrill Shaffer. The relevant emails provide as follows:

> [From Judge Knisley to Probation Officer Shaffer:] Can you find out for me as to whether the e-mails [from Appellant to the victim] stopped because of [Appellant], as counsel stated, or because the victim changed her [F]acebook [settings]??

Trial Court Opinion, 5/20/19, Attachment (copy of the email exchange). Probation Officer Shaffer responded to Judge Knisley as follows:

> Judge,
>
> I contacted Detective Theresa Stauffer of the Northern Lancaster County Regional Police Department, who investigated the incidents regarding the Facebook messages. She was in the courtroom today. This is her response to whether the victim made changes to her Facebook account:
>
> Yes. I had to walk her through a lot of settings to make certain things private including her friends. If I recall correctly, he was also sending friend requests to her friends. She then made her friends private and also only made a few pictures public accessible. She also changed her settings to limit outside contact from non-friends and went through her friend list to confirm that she actually knew them. I also think [Appellant] used another

---

[2] The December 12, 2018 emails reveal that Judge Knisley's first message was transmitted at 12:56 p.m., and the final email in this exchange was sent by Probation Officer Shaffer at 1:50 p.m. Trial Court Opinion, 5/20/19, Attachment (copy of the email exchange). Thus, these emails occurred approximately four hours after Appellant's December 12, 2018 probation revocation hearing, which concluded at 9:18 a.m. N.T., 12/12/18, at 9.

account claiming to be friends [with the victim,] (but I'm not at station and can't confirm). The victim was terrified and actually considered leaving school bc she did not feel safe. We had to involve the university police. [Appellant] also kept sending [the victim] repeated messages. We're not talking about one. [Appellant] only stopped [because the victim] changed her settings making it harder to be contacted by non friends.

Detective Stauffer was not at the station when she responded and asked that I let you know that she was going by memory. She also said that her report from these incidents is available, if you wish to review it.

Please contact me if you have any further questions or need any additional information.

*Id.*

This Court has stated: "prior to imposing sentence a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." ***Commonwealth v. Rhodes***, 990 A.2d 732, 746 (Pa. Super. 2009) (quoting ***Commonwealth v. Schwartz***, 418 A.2d 637, 640-641 (Pa. Super. 1980) (internal quotation marks and additional citation omitted)).

> Nevertheless, the discretion of a sentencing judge is not unfettered; a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information, and any sentence predicated on such false assumptions is inimicable … to the concept of due process. Obviously, the probability of receiving accurate pre-sentence information is considerably enhanced when the defendant has an opportunity to review and dispute the facts and allegations available to the sentencing judge.

*Rhodes*, 990 A.2d at 746 (quoting *Schwartz*, 418 A.2d at 640-641) (internal citation omitted).[3]

In *Rhodes*, the defendant entered a guilty plea to voluntary manslaughter. *Rhodes*, 990 A.2d at 736. The trial court accepted the plea and the case proceeded to sentencing. *Id.* At the time of sentencing, the trial court declined to consider a presentence report; instead, the trial court reviewed police reports it ordered from the Commonwealth, *ex parte*. *Id.* at 750. The trial court's reliance on the *ex parte* reports was not disclosed until the sentencing hearing was in progress, and the trial court had already completed and distributed a written "Statement of Sentencing Rationale" to "all present in the courtroom, except counsel." *Id.* On appeal, this Court concluded that the trial court had predetermined the defendant's sentence and the defendant was deprived of any meaningful opportunity to challenge the layered hearsay of the *ex parte* reports, which was the primary source of information on which the court made its determination to impose a sentence close to the statutory maximum. *Id.*

In the case at bar, the trial court considered the relevant sentencing factors and a PSI. Trial Court Opinion, 5/20/19, at 8 (citing N.T., 2/19/19, at

---

[3] In *Rhodes*, this Court quoted from Part I of the dissenting opinion in *Schwartz*. *Rhodes*, 990 A.2d at 746. For clarity, we note that the Majority in *Schwartz*, stated: "We agree with Part I of the dissenting opinion, which holds that any *ex parte* information received by a judge before sentencing should be disclosed to a defendant so that he may have an opportunity to examine it and dispute its accuracy." *Schwartz*, 418 A.2d at 638.

7-9).  The trial court also considered Appellant's "persistent non-compliance with the conditions of his probation and parole despite having been shown leniency in the past." *Id.* at 9 (citing N.T., 2/19/19, at 7-9).  The trial court noted:

> [Appellant's] first violation occurred approximately three (3) months after his release from incarceration. His second violation occurred approximately eight (8) months after his release from incarceration. The instant violation, [Appellant's] third, was the most concerning of all, given that he absconded from supervision immediately upon release and made numerous attempts to contact the victim in this case with messages that were extremely disturbing in nature while there was a bench warrant out for his arrest.[19] Those messages filled approximately fifty (50) pages and included allegations of corruption in the legal system, allegations that the police, probation officers and prosecutors have made false allegations against him, allegations that this [c]ourt has ties to the mafia and has unethically accepted money in this case, and claims that the conditions of his supervision do not apply to him.[20] Though [Appellant] claims to now understand that he must comply with the directions of this [c]ourt and the conditions of any probation or parole, his prior conduct strongly suggests otherwise. Despite being given multiple opportunities and warnings in th[e] past, [Appellant] still refuses to comply with the conditions of his probation and parole, including an outright refusal to undergo the counseling recommendations from his sex offender evaluation.[21] [Appellant's] actions demonstrate a complete refusal to take responsibility for his actions, a complete refusal to comply with the terms of his original sentence and a complete disregard for the gravity of his offenses on the victim and the community.
>
> [19] N.T. Parole/Probation Violation, 12/12/18, pp. 2-4.
> [20] N.T. Parole/Probation Violation, 12/12/18, pp. 3-4, 7-8.
> [21] N.T. Sentencing Hearing, 02/19/19, pp. 6-8.

Trial Court Opinion, 5/20/19, at 9-10.

The trial court addressed its consideration of the *ex parte* emails as follows:

The [c]ourt acknowledges that the information received from the probation officer in this matter was not ultimately included in the PSI and, therefore, was unknowingly not disclosed to [Appellant] prior to the sentencing hearing. However, the [c]ourt disclosed the information to [Appellant] at the hearing, thereby giving [Appellant] the opportunity to dispute the information. [Appellant] neither objected to the consideration of the information nor attempted to dispute or deny the veracity of the information at the time of sentencing. Furthermore, the consideration given to the information was minimal and had little effect on [Appellant's] sentence compared to the great weight given to [Appellant's] repeated non-compliance with the terms of his original sentence and violations of the conditions of probation and parole. [Appellant] has clearly demonstrated on multiple occasions that he is not capable and/or willing to comply with the conditions of probation and/or parole. Therefore, a lengthy term of incarceration is warranted because a lesser sentence would depreciate the continued seriousness of [Appellant's] violations and is not suitable for [Appellant's] rehabilitative needs. [Appellant's] sentence is proper and appropriate in light of all the relevant factors and takes into consideration the protection of the public, the gravity of the offense on the victims and community and the
rehabilitative needs of [Appellant].

*Id.* at 10-11.

After review, we conclude that there was no abuse of discretion. As the trial court admitted, it did review the *ex parte* emails. However, the trial court pointed out that this consideration was limited in scope. Additionally, the trial court referenced information gained in the emails in refuting Appellant's claim that he voluntarily ceased contact with the victim prior to the imposition of sentence. N.T., 2/19/19, at 8. Appellant notes that he did not receive the *ex parte* information until after the sentencing hearing; however, he admits that the information contained in the *ex parte* email was mentioned prior to the imposition of sentence. Appellant's Brief at 8. Nevertheless, Appellant did

- 13 -

not challenge the trial court's assertion despite having an opportunity to object. Appellant's opportunity to object separates the instant case from *Rhodes*, wherein the trial court relied on an *ex parte* report and drafted a sentencing memorandum prior to the sentencing hearing, foreclosing any opportunity for the defendant to challenge the *ex parte* report. **See Commonwealth v. Broadie**, 489 A.2d 218, 221 (Pa. Super. 1985) (affirming the judgment of sentence and distinguishing instances where a defendant had an opportunity to object to the trial court's consideration of *ex parte* sentencing information). For these reasons, we conclude that Appellant is entitled to no relief.

Assuming, *arguendo*, that the trial court errantly considered the emails, any error would be harmless and our decision would remain the same. **See Commonwealth v. Johnson**, 107 A.3d 52, 84 (Pa. 2014) (discussing harmless error in the context of a capital murder sentence and holding that harmless error may be established, *inter alia*, where the error did not prejudice the defendant or the prejudice was only *de minimis*.). The record reveals a pattern where Appellant repeatedly sent the victim unwanted communications in direct violation of the terms of his probation and parole. N.T., 12/12/18, at 3-4; N.T., 2/19/19, at 4. Whether Appellant ceased these prohibited contacts of his own accord or after the college changed the victim's Facebook settings is largely immaterial and any error *de minimis*; the fact remains that Appellant

violated his probation by contacting the victim, and the trial court was limited only by the original sentence it could have imposed. *Fish*, 752 A.2d at 923.

For the reasons set forth above, we discern no abuse of discretion. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/07/2020